UNITED STATES of America,
Plaintiff–Appellee,

v.

Thomas Stanley WERKING,
Defendant–Appellant.

No. 89–8093.

United States Court of Appeals,
Tenth Circuit.

Sept. 26, 1990.

Laurence P. Van Court, Cheyenne, Wyo., for defendant-appellant.

Richard A. Stacy, U.S. Atty., District of Wyoming, and John R. Green, Asst. U.S. Atty., Cheyenne, Wyo., for the plaintiff-appellee.

Before TACHA, BARRETT, and BALDOCK, Circuit Judges.

TACHA, Circuit Judge.

Plaintiff-appellant, Thomas Stanley Werking, entered a conditional plea of guilty under Federal Rule of Criminal Procedure 11(a)(2) in federal district court to possession with intent to distribute marijuana in violation of 21 U.S.C. section 841(a)(1).[1] Werking's plea was conditioned on his right to bring this appeal challenging the district court's refusal to suppress evidence of approximately seventy-five pounds of marijuana that a highway patrolman obtained in a warrantless search of the vehicle Werking was driving. Werking contends the district court erred in finding: (1) the initial automobile stop was lawful; (2) the further questioning by the patrolman was a consensual encounter outside the scope of the fourth amendment; and (3) the consent to search the automobile was voluntary. We exercise jurisdiction under 28 U.S.C. section 1291 and affirm.

Following an evidentiary hearing on Werking's motion to suppress, the district court entered findings of fact in the record as required by Federal Rule of Criminal Procedure 12(e). Based on its view of the testimony, the court found that the government had met the burden of proving the constitutionality of its actions and the defendant had failed to give any credible reasons to justify suppression.

We are not empowered to substitute our judgment for findings of the district court unless clearly erroneous. *See, e.g., United States v. Rivera,* 867 F.2d 1261, 1262–63 (10th Cir.1989). In reviewing the district court's findings, we are mindful that "[a]t a hearing on a motion to suppress, the credibility of the witnesses and the weight to be given the evidence together with the inferences, deductions and conclusions to be drawn from the evidence, are to be determined by the trial judge." *United States v. Pappas,* 735 F.2d 1232, 1233 (10th Cir.1984). Accordingly, we review the evidence in a light favorable to the district court's determination. *See, e.g., United States v. Medlin,* 842 F.2d 1194, 1198 (10th Cir.1988); *United States*

---

**1.** After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App.. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

*v. Obregon,* 748 F.2d 1371, 1376 (10th Cir. 1984).

On the evening of March 18, 1989 Werking was driving a 1983 Volvo with California commercial vehicle license tags on Interstate 80 in eastern Wyoming when he overtook highway patrolman Dan Dyer in his patrol car. Although Werking was not speeding, Dyer decided to run a routine registration check on the Volvo. The check revealed it belonged to an automobile dealership in Poway, California. Dyer suspected the California car was being driven in violation of Wyoming's "one-trip" permit law. This law requires all vehicles brought into the state for sale to register at a port of entry and affix a permit to the vehicle's front windshield. The evening light made it impossible for Dyer to verify whether the Volvo had such a permit. He also thought the car could be stolen from a car lot or illegally registered. Based on the possibility of these violations, Dyer pulled Werking over to investigate the registration and purpose of the out-of-state vehicle.

When Dyer asked Werking whether the Volvo was being transported from one dealer to another, Werking told him he was delivering the car to a friend who had flown to Ohio when that friend's father had died. The patrolman then requested papers to verify the story. Werking produced registration papers, a driver's license, and a letter from the registered owner authorizing Werking to drive the Volvo.

Dyer returned to his patrol car to check the driver's license and computer files for any outstanding warrants. Finding no problems with Werking's license or papers, Dyer filled out a "contact sheet" stating the reasons for the detention and indicating no violation had been found. Dyer returned Werking's registration papers and driver's license and handed him a copy of the contact sheet.

Dyer then asked Werking if he was transporting firearms, narcotics, or large sums of money in the vehicle. Werking answered "no" to all three questions. Dyer asked whether Werking would mind if he took a look in the trunk. Werking said "no" and opened the trunk for the patrolman. There Dyer found five new nylon duffle bags. Dyer asked whether Werking minded if he opened them. Werking shook his head, again indicating "no." Dyer found approximately seventy-five pounds of marijuana in the bags.

Werking first contends that the initial automobile stop was unlawful. In *United States v. Cooper,* 733 F.2d 1360, 1363 (10th Cir.), *cert. denied sub. nom. Threat v. United States,* 467 U.S. 1255, 104 S.Ct. 3543, 82 L.Ed.2d 847 (1984), we identified three categories of citizen encounters with law enforcement officials. The first, a consensual encounter, involves a citizen's voluntary cooperation with an official's non-coercive questioning. A consensual encounter is not a seizure within the meaning of the fourth amendment. The second, an investigative detention or *"Terry* stop," is a seizure within the scope of the fourth amendment that is justified when specific and articulable facts and rational inferences drawn from those facts give rise to a reasonable suspicion a person has or is committing a crime. The third category, an arrest, is also a fourth amendment seizure that is characterized by a highly intrusive or lengthy detention and requires probable cause the arrestee has or is committing a crime. Although these three categories do not provide a litmus test for fourth amendment protections, they do operate as guidelines for characterizing citizen encounters with law enforcement officials. *United States v. Espinosa,* 782 F.2d 888, 891 (10th Cir.1986).

In this case, the encounter between Dyer and Werking began as an investigative detention. As noted above, a person may be detained in this manner if specific and articulable facts and rational inferences drawn from those facts give rise to a reasonable suspicion that an offense is being committed. *Cooper,* 733 F.2d at 1363.

At the evidentiary hearing, Dyer testified that he stopped the Volvo because he suspected the driver may have been in violation of Wyoming's one-trip permit law. This statute requires that all vehicles driven through Wyoming for the purpose of sale obtain a single trip permit at a port of

entry and display it on the lower right inside of the windshield. Wyo. Stat. § 37–8–403 (Supp.1989). To enforce this law, an officer must ask the driver of an out-of-state vehicle whether it is being driven for the purpose of sale.

Dyer testified that he stops vehicles subject to the one-trip permit law nearly once a week. Most drivers he stops are unaware of the statute's requirements and therefore do not have a permit. Here, Dyer's registration check revealed that the Volvo was registered to an auto dealership in California. It would be subject to the one-trip permit law if it was being driven through Wyoming for the purpose of sale. To enforce the law, Dyer had to stop the Volvo to investigate whether it was being driven for the purpose of sale or for some other purpose.

Based on the facts revealed by the registration check and Dyer's testimony about the frequency of these violations, we cannot conclude the district court's finding that Dyer had a reasonable suspicion to stop Werking was clearly erroneous. We hold that Werking's initial stop and brief detention to inquire about the purpose of the trip satisfied the necessary prerequisites for an investigative detention and thus did not violate Werking's fourth amendment rights.

 Werking's argument that Dyer's stop was pretextual is without merit. In a pretextual stop, the law enforcement officer must deviate from his usual practice. *United States v. Guzman,* 864 F.2d 1512, 1517 (10th Cir.1988). As noted above, Dyer stops vehicles nearly once a week based on his suspicion they are in violation of the one-trip permit law. His decision to investigate the Volvo was therefore "business as usual," not a deviation from normal practice.

 Werking next contends that Dyer's further questioning after returning the driver's license and other papers violated his fourth amendment rights. The initial investigative detention was concluded when Dyer returned Werking's license and registration papers. At this point, the encounter between Werking and Dyer became an ordinary consensual encounter between a private citizen and a law enforcement official.

 A consensual encounter is simply the voluntary cooperation of a private citizen in response to non-coercive questioning by a law enforcement official. Because an individual is free to leave at any time during such an encounter, he is not "seized" within the meaning of the fourth amendment. *See Espinosa,* 782 F.2d at 890; *Cooper,* 733 F.2d at 1363. Whether a particular encounter constitutes a consensual encounter or an investigative detention involving fourth amendment protections depends on whether a reasonable person under the circumstances would believe she was not free to leave and/or disregard the official's request for information. *See INS v. Delgado,* 466 U.S. 210, 215, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984) (citing *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (Stewart, J.), *reh'g denied* (1980)).

 An individual has been seized only if he has an objective reason to believe that he was not free to end his conversation with the law enforcement official and proceed on his way. *United States v. Mendenhall,* 446 U.S. 544, 555, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (Stewart, J.), *reh'g denied,* 448 U.S. 908, 100 S.Ct. 3051, 65 L.Ed.2d 1138 (1980); *Pliska v. City of Stevens Point,* 823 F.2d 1168, 1176 (7th Cir. 1987). In *Mendenhall,* Justice Stewart noted that there may be a seizure when there is "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." 446 U.S. at 554, 100 S.Ct. at 1877; *see also Florida v. Royer,* 460 U.S. 491, 501, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983) (defendant effectively seized for fourth amendment purposes when government agents retained his driver's license and airline ticket); *Pliska v. City of Stevens Point,* 823 F.2d 1168, 1176 (7th Cir. 1987) (questioning by officer and request

for identification outside the scope of fourth amendment until defendant locked in squad car); *United States v. Pavelski,* 789 F.2d 485, 488–89 (7th Cir.) (individual in an automobile bounded on three sides by police patrol cars not free to leave and thus encounter not consensual), *cert. denied,* 479 U.S. 917, 107 S.Ct. 322, 93 L.Ed.2d 295 (1986); *United States v. Perate,* 719 F.2d 706, 709 (4th Cir.1983) (squad cars blocking forward and rear path of limousine constituted an investigative detention).

The determination of precisely when a law enforcement official's questioning rises to the level of a show of authority sufficient to constitute a seizure is "not always an easy one." *United States v. Black,* 675 F.2d 129, 135 (7th Cir.1982) (quoting *United States v. Viegas,* 639 F.2d 42, 44 (1st Cir.), *cert. denied,* 451 U.S. 970, 101 S.Ct. 2046, 68 L.Ed.2d 348 (1981)), *cert. denied,* 460 U.S. 1068, 103 S.Ct. 1520, 75 L.Ed.2d 945 (1983). The decision calls for the "refined judgment" of the trial court. *Black,* 675 F.2d at 129. We are not persuaded that the findings of the district court on this close question of fact are clearly erroneous. The record indicates that Werking was free to proceed after Dyer returned his papers. As the district court pointed out in its findings, Dyer testified under oath that Werking then was free to leave. There was no evidence that Werking was constrained by an overbearing show of authority. The only show of authority in this case was the fact that Dyer was a uniformed police officer. This fact alone, however, is insufficient to prove Werking was "seized" within the meaning of the fourth amendment. *See Mendenhall,* 446 U.S. at 555, 100 S.Ct. at 1877 (citing *Terry v. Ohio,* 392 U.S. 1, 31, 32–33, 88 S.Ct. 1868, 1885–86, 20 L.Ed.2d 889 (1968) (Harlan, J., concurring).

A panel of this court recently held that the continued questioning of an individual following a routine traffic stop can violate the defendant's fourth amendment rights. *United States v. Guzman,* 864 F.2d 1512, 1519–20 (10th Cir.1988). In *Guzman,* the officer stopped the defendant's car because he was not wearing his seat belt, a violation of the state's traffic regulations. *Id.*

at 1514. The defendant provided the officer with his driver's license and registration papers. After running a computer check that showed the license and registration were valid, the officer returned to the defendant's car and began questioning him. The officer did not return defendant's license. *Id.* at 1519. The court concluded that the officer did not have any reasonable suspicion to justify a temporary detention for questioning. *Id.* at 1520.

*Guzman* is different from this case. Before Dyer asked Werking any further questions, he returned Werking's driver's license and registration papers and gave him the contact sheet. The officer in *Guzman,* however, did not return the defendant's license before questioning him. The defendant legally could not proceed on his way. He thus was seized within the meaning of the fourth amendment. In the present case, however, Werking was free to leave the scene. He chose to engage in a consensual encounter with Dyer. We hold that Werking's responses to Dyer's questions about transporting narcotics, firearms, or large sums of money were the voluntary cooperation of a private citizen with a law enforcement official and were not obtained in violation of the fourth amendment.

 Werking finally contends that he did not voluntarily consent to Dyer's search of the Volvo's trunk. Whether consent is voluntary is a question of fact to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2047–48, 36 L.Ed.2d 854 (1973). The government has the burden of proving that consent is given freely and voluntarily. *Id.* at 222, 93 S.Ct. at 2045. This court has established three requirements to identify voluntary consent:

(1) There must be clear and positive testimony that consent was "unequivocal and specific" and "freely and intelligently" given; (2) the government must prove consent was given without duress or coercion, express or implied; and (3) the courts indulge every reasonable presumption against the waiver of fundamental constitutional rights and there

must be convincing evidence that such rights were waived.

*United States v. Abbott,* 546 F.2d 883, 885 (10th Cir.1977) (quoting *Villano v. United States,* 310 F.2d 680, 684 (10th Cir.1962), *cert. denied sub. nom. Miller v. United States,* 440 U.S. 958, 99 S.Ct. 1499, 59 L.Ed.2d 771 (1979)).

The district court properly held that all three requirements for voluntary consent were satisfied by the testimony presented by the government. First, Dyer testified that Werking answered "no" when asked whether he minded if Dyer looked in the trunk and later shook his head "no" when asked whether he minded if Dyer looked in the duffel bags. This testimony provides clear and positive evidence that Werking's consent was unequivocal, specific, and freely and intelligently given.

Second, Dyer testified that when Werking was given his license, registration papers, and the contact sheet, he was free to leave. Werking was not subject to duress or coercion to continue cooperating with Dyer.

Finally, as the district court pointed out in its findings, the fact Werking himself opened the Volvo trunk and voiced no objections to the search as it proceeded is additional evidence that Werking did waive his rights regarding the search. We therefore cannot conclude the district court's decision that the government met its burden of proof on this issue was clearly erroneous.

This case is easily distinguished from the case relied on by Werking, *United States v. Recalde,* 761 F.2d 1448, 1453 (10th Cir. 1985). In *Recalde,* the court held that the defendant's consent to the search was not voluntarily given because the officer retained the defendant's license and vehicle registration. The defendant therefore was not free to proceed at the time he gave consent to the search. *Cf. United States v. Miller,* 835 F.2d 187, 189 (8th Cir.1987) (consent voluntary when agent returned driver's license and airline ticket before asking to search his luggage). In the present case, however, Dyer had returned Werking's license and registration before

he asked to search the trunk. As noted above, Werking was then free to proceed. Accordingly, we hold the district court's finding that Werking voluntarily consented to the search is not clearly erroneous.

Werking also contends his consent to further questioning and the automobile search was infected by an unlawful detention. This argument lacks merit because the encounter between Dyer and Werking was lawful at all stages from the initial detention to his ultimate arrest.

The trial court properly denied Werking's motion to suppress because marijuana obtained from the search of the Volvo is admissible evidence. The judgment of the trial court is AFFIRMED.