931 F.2d 63
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
William AGUILAR, Defendant-Appellant.
 No. 89-1366.
 United States Court of Appeals, Tenth Circuit.
 April 25, 1991.
 
 Before LOGAN and EBEL, Circuit Judges, and RUSSELL, District Judge.*
 ORDER AND JUDGMENT**
 LOGAN, Circuit Judge.
 
 
 1
 Defendant William Aguilar appeals his conviction for attempt to manufacture methamphetamine, in violation of 21 U.S.C. Secs. 841(a)(1) and 846 and 18 U.S.C. Sec. 2, and carrying a firearm in relation to a drug trafficking offense, in violation of 18 U.S.C. Sec. 924(c). He argues that the district court erred in denying his motion to suppress, and that the evidence presented at trial was insufficient to show an attempt to manufacture methamphetamine. We affirm.
 
 
 2
 * Defendant argues that the district court should have suppressed evidence seized near Durango from a rental truck that he was driving and evidence seized from his wife a few weeks later. To determine this matter we consider separately the three traffic stops which together produced the evidence at issue.
 
 
 3
 First, we must determine the validity of the stop and search at Cortez, because Officer Powell's observations there formed the basis for the Durango search. Defendant contends that the traffic stop at Cortez was pretextual. We do not agree.
 
 
 4
 Under the objective reasonableness standard of United States v. Guzman, 864 F.2d 1512, 1517 (10th Cir.1988), a stop is pretextual if "a reasonable officer would not have made the stop but for the existence of an impermissible purpose." United States v. Erwin, 875 F.2d 268, 272 (10th Cir.1989). Although Officers Powell and Waterman disagreed about the exact location of the posted sign, both testified that they observed the truck traveling about ten miles per hour over the speed limit.[1] Defendant admitted to the officers that he was speeding. Police do regularly stop speeding vehicles, and defendant did not even question in the district court whether these officers routinely stopped cars that they observed exceeding the speed limit by ten miles per hour. Therefore, we cannot conclude that the officers did not have a reasonable basis for stopping the truck. The officers' other motives, if any, are irrelevant.
 
 
 5
 Powell's request for defendant's voluntary consent to look in the back of the truck was also permissible. We have held that, once an officer has issued a citation and returned the registration and driver's license, the interaction between officer and motorist becomes an ordinary consensual encounter. United States v. Werking, 915 F.2d 1404, 1409 (10th Cir.1990). Accord United States v. Deases, 918 F.2d 118, 122 (10th Cir.1990). In the absence of "an overbearing show of authority," the officer may question the motorist about the presence of drugs or guns or request a voluntary consent to search. Werking, 915 F.2d at 1409. The motorist may refuse to answer and is free to leave. Id. When the officers asked defendant for permission to look and go into the back of the truck, they had returned defendant's license and registration. II R. 18-19, 62-63. Defendant neither presents evidence of a coercive display of authority nor argues that the consent was given involuntarily. Moreover, Powell stopped his search when defendant withdrew his consent.
 
 
 6
 Second, we hold that Sergeant Mitchell had probable cause to stop the truck and search it near Durango. Mitchell based his probable cause on observations made by Officers Powell and Waterman during the search at Cortez and on the sergeant's own experience and training. Powell had noticed a strong smell of ether and a double-necked, round-bottomed glass flask with some type of solid residue in it. Waterman had observed that defendant became more nervous the further Powell moved into the cargo area of the truck. Powell reported the observations to the Colorado State Patrol's Office in Durango, and they were passed on to Mitchell, who had expertise in identifying methamphetamine labs that Powell did not. Mitchell concluded that defendant's truck contained a drug lab.
 
 
 7
 In United States v. Lopez, 777 F.2d 543 (10th Cir.1985), we held that the combination of observations of an ether-like odor emanating from a car, the unusual placement of speakers in the car, and the officer's training and experience with drug-related odors formed probable cause to search the car. Id. at 551. Moreover, it is well established that officers may pool information to establish probable cause. United States v. Salinas-Calderon, 728 F.2d 1298, 1301-02 (10th Cir.1984). Thus, the combination of Powell's observations of both the ether-like odor and flask with residue, Waterman's observation's of defendant's increasing nervousness, and Mitchell's background in identifying drug labs gave Mitchell probable cause to stop and search the truck for evidence of crime. We need not address any of the alternative bases for the search.
 
 
 8
 Third, we hold that the stop of defendant's wife a few weeks later was valid and the evidence seized admissible. Trooper Godsey and Agent Taylor, using a radar, clocked the car in which she was a passenger and of which she had custody, as traveling between 72 and 76 miles per hour in a 55 mile-per-hour zone. They observed that the driver had to slam on the brakes and move to the left to avoid rear-ending another vehicle. Defendant does not argue that the car was not speeding. Even though the officers had previously been looking for defendant's wife and the car, a reasonable officer would have stopped a car driving so dangerously. Under the objective Guzman test, 864 F.2d at 1517, the stop was not pretextual.
 
 
 9
 Defendant's wife consented to speak to the officers. She also consented to the search of the trunk, where guns, drugs, and money were found. Defendant does not contest the voluntariness of his wife's consent to speak with the officers or to have them search her trunk. In addition, the list of nine chemicals used in making methamphetamine was discovered in defendant's wallet, which was in his wife's purse, during a valid inventory search after her arrest. Thus, all evidence in question on this appeal was seized lawfully, and the motion to suppress was properly denied.
 
 II
 
 10
 Finally, we consider the sufficiency of the evidence to convict defendant of having aided and abetted an attempt to manufacture methamphetamine. In United States v. Monholland, 607 F.2d 1311 (10th Cir.1979), we stated, "It is essential that the defendant, with the intent of committing the particular crime, do some overt act adapted to, approximating, and which in the ordinary and likely course of things will result in, the commission of the particular crime." Id. at 1318. We have also held that the substantial step required to show attempt must strongly corroborate the firmness of the defendant's criminal intent. United States v. Savaiano, 843 F.2d 1280, 1296 (10th Cir.1988). Defendant asserts that the evidence failed to establish an overt act that strongly corroborates criminal intent to assist in the manufacture of methamphetamine. He asserts that he was engaged in a noncriminal chemical business.
 
 
 11
 We believe that the circumstantial evidence is sufficient for a reasonable jury to find beyond a reasonable doubt that defendant was intentionally transporting a dismantled methamphetamine lab and the necessary chemicals, which would be used to manufacture methamphetamine. Defendant was the driver of a rental truck that contained the glassware and other equipment necessary for a drug lab and all but one of the chemicals required to make methamphetamine. Defendant admitted that the contents of the truck cargo area were his. Defendant also carried in his wallet a list of nine chemicals used in making methamphetamine. Two loaded guns were found in the truck that defendant was driving, which tends to corroborate the finding of a criminal purpose.
 
 
 12
 Two sets of evidence, in particular, might lead a reasonable jury to believe beyond a reasonable doubt that defendant was attempting to assist in the manufacture of methamphetamine. First, traces of methamphetamine were found in some of the glassware in the truck, revealing that the equipment which defendant was transporting had already been used to manufacture the drug. VI R. 200; VII R. 317-21. Second, defendant made several admissions to Agents Taylor and Reed while being transported to Denver. He said that he knew he was in trouble "since you seized that methamphetamine, laboratory out of my truck...." VI R. 212; see also III R. 287. He also admitted that he had received a book of chemical customers who were methamphetamine manufacturers and that he knew the location of 200 pounds of methamphetamine. VI R. 213, 215; III R. 287-88. He told the officers that he was going to Denver to pick up the chemicals noted on his list so that he could make "an additional 200 pounds of methamphetamine." VI R. 216. The government's evidence, if believed by the jury, is sufficient to establish defendant's overt actions, which corroborate his criminal intent to help manufacture methamphetamine.
 
 
 13
 AFFIRMED.
 
 
 
 *
 The Honorable David L. Russell, United States District Judge for the Eastern, Northern and Western Districts of Oklahoma, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 The district court considered discrepancies in the officers' testimony about the exact speed of the truck and the posted speed limit, and determined that defendant was speeding. II R. 207. The finding is not clearly erroneous