968 F.2d 21
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellant,
v.
Arturo BELTRAN and Jesus Humberto Beltran, Defendants-Appellees.
 No. 92-4026.
 United States Court of Appeals, Tenth Circuit.
 June 15, 1992.
 
 Before LOGAN and HOLLOWAY, Circuit Judges, and CONWAY, District Judge*.
 ORDER AND JUDGMENT**
 HOLLOWAY, Circuit Judge.
 
 
 1
 This is an appeal by the government from an order granting a motion to suppress by the defendants-appellees, Jesus and Arturo Beltran. The suppression order covers evidence obtained as a result of a search of a rented truck in which 16 kilograms of cocaine were found after an alert by a search dog. The trial judge made detailed findings and concluded that there was a pretextual and unlawful detention of the Beltrans, that consent for the search was not informed or voluntary, and that the officer exceeded the scope of the consent given so "that the evidence obtained as a result must be suppressed." The judge's findings and conclusions were stated in an unpublished Memorandum Opinion and Order dated January 30, 1992. Appendix at 90.
 
 
 2
 The government appealed. A divided panel of this court granted a stay of the proceedings and trial in the district court pending this appeal, which has been expedited.
 
 
 3
 * The appeal focuses on the findings and conclusions in the trial court's order, which we will briefly summarize.
 
 
 4
 The court's findings detail the background leading to the contested search. On the morning of November 20, 1991, Utah Highway Patrol Trooper Shields was traveling east on Interstate 70 in Sevier County, Utah, when a U-Haul truck passed him, moved in his lane, and then reduced speed. Shields followed for a considerable distance, calling a dispatcher and determining that the truck's license plates were not "wanted." After observing the truck weaving in its lane, Shields pulled the U-Haul over and questioned the occupants of the vehicle. He found that the driver, Arturo, did not have a driver's license. However the passenger, Jesus, had a valid Colorado driver's license and a valid U-Haul rental contract made out to him. Neither defendant was listed as "wanted" by NCIC. The men stated they were hauling a load of used furniture from Los Angeles to Denver.
 
 
 5
 Shields questioned the men separately while writing citations to Arturo for driving without a license. Jesus was cited for allowing an unlicensed driver to operate a vehicle. After issuing the citations, Shields kept Jesus' license and the rental agreement and instructed both men to follow him to a magistrate in Richfield, Utah, where they could post bond to insure their appearance.
 
 
 6
 While en route, Shields called ahead and arranged for a canine drug-sniffing team to meet him at the courthouse where he hoped to get consent to search the U-Haul. At the courthouse, the defendants paid their fines and Shields returned the license and rental agreement to Jesus. As the defendants were proceeding to the parking lot, Shields told them that although they were free to go, he wanted to search their vehicle. Jesus said he would consent and Shields produced a written form, requesting Jesus' signature. Jesus asked what would happen if he didn't sign. He was told he would be free if he didn't sign; that Shields would not stop him further down the road. Jesus asked then whether someone else would stop him, and Shields replied, "I don't think so." During this colloquy about the consent form, Jesus said: "You can see the truck, you can open and look at furniture." Order at 4.
 
 
 7
 After Jesus signed the form, Shields motioned to the dog handler to join him at his location; Shields opened the truck's back door and let the dog in to conduct the search, which resulted in seizure of the 16 kilograms of cocaine found in a box and gym bag secreted inside some of the furniture.
 
 
 8
 The court addressed first the contention of the defendants that Shields' actions in keeping Jesus' driver's license and rental agreement and escorting Jesus and Arturo into Richfield was a pretext for the real purpose of searching the U-Haul. The court agreed and found the actions were a pretext. Under the test in United States v. Guzman, 864 F.2d 1512, 1515, 1517 (10th Cir.1988), the judge cited Shields' testimony that it was not his common practice to take out-of-state offenders to a magistrate to post bond, that when he escorted the Beltrans to Richfield, he did not think he had probable cause to get a search warrant but that he called ahead nonetheless to arrange for a canine drug team. Order at 6.
 
 
 9
 The court also found it incredible that Shields was motivated to take the men to see the magistrate merely because he had no mailing slips for Sevier County. The citations clearly indicated the address to which the fine should be sent and Shields had a record of Jesus' driver's license and his Colorado address. The court thus found the trip to the magistrate's office was pretextual; that it was made to allow the canine drug team time to get in place; and that the pretextual detention "set in motion a series of events which eventually led to the limited consent of Jesus Beltran to search his vehicle." Order at 7.
 
 
 10
 The trial judge further found that taking the Beltrans to the magistrate was an impermissible detention. The judge pointed out that although Jesus had a valid Colorado driver's license and a valid rental agreement, they were detained and taken to the magistrate in hopes that after their appearance they would answer additional questions and consent to search of their vehicle.
 
 
 11
 The judge rejected the government's contention that there was a consensual police-citizen encounter. He distinguished United States v. Werking, 915 F.2d 1404 (10th Cir.1990), and United States v. Deases, 918 F.2d 118 (10th Cir.1990), cert. denied, 111 S.Ct. 2859 (1991), because here Shields kept the rental agreement and Jesus' license after they were given their citations, and while Shields was escorting them to the magistrate's office. Order at 11.
 
 
 12
 Further, the court found that "Shields' disclosure concerning the nature and scope of the search was insufficient to allow Jesus to make [an] informed, voluntary decision as to whether to allow or disallow the search." Order at 12. Jesus knew nothing of the drug-sniff team and from his comments obviously did not understand the nature or scope of Shields' intended search. Consequently the court found that the consent was not fully informed or truly voluntary. Id. at 13. The court found also that the scope of the search was exceeded when the drug-sniff dog entered the truck and conducted a search. Jesus had said only that: "You can see the truck, you can open and look at furniture." Exh. 1 at 2.
 
 
 13
 From these findings the court concluded that the evidence obtained as a result of the search must be suppressed.
 
 II
 
 14
 The government argues that the trial judge erred in finding illegality in the removal of the defendants Jesus and Arturo from the scene of the roadside stop to the courthouse, in his finding against the voluntariness of the consent given for the search, and in finding that the search conducted went beyond the scope of the consent given. The government says that all the findings were clearly erroneous. Brief for the United States at 7.
 
 
 15
 We disagree. There was no challenge of any significance in the government's argument or brief to the detailed statement of the evidence by the trial judge in his Memorandum Opinion and Order. Our reading of the transcript of the suppression hearing leads us to the firm conclusion that the record amply supports the judge's findings. We agree with his conclusions and accordingly affirm.
 
 
 16
 As the government's brief notes, there was no illegality found by the district court in the initial roadside stop. We also feel that this action at the outset was permissible and find no unlawful action by Trooper Shields at that point.
 
 
 17
 The government challenges the trial judge's finding that escorting the Beltrans to the magistrate was an impermissible detention and pretextual. It is conceded that the finding is factual, with the government bearing the burden of showing that the finding is clearly erroneous. United States v. Deases, 918 F.2d 118, 121 (10th Cir.1990). The contention is that it is inappropriate to consider Shields' decision, never conveyed to the Beltrans, to call for a drug-sniffing team; and that it is wrong to follow the test of "whether under the same circumstances a reasonable officer would have made the stop in the absence of the invalid purpose." United States v. Guzman, 864 F.2d 1512, 1517 (10th Cir.1988) (quoting United States v. Smith, 799 F.2d 704, 709 (11th Cir.1986)) (emphasis in original Smith quotation). It is suggested that we undertake plenary review and reject our Guzman "would have" test. The government thus acknowledges that our panel cannot itself do this. See United States v. Spedalieri, 910 F.2d 707, 710 n. 3 (10th Cir.1990). The criticism of the judge's analysis leading to the pretext finding does not convince us that we should hold the finding clearly erroneous. The judge cited Jesus' valid rental agreement, his valid Colorado driver's license, and the lack of evidence for a warrant, along with the fact that Shields was going to try to search the vehicle, as coming within the pretext definition of Guzman, 864 F.2d at 1515. Order at 8-9. From these facts, the judge could properly infer that the detention and transportation were pretextual. See United States v. Walker, 933 F.2d 812, 815 (10th Cir.1991) ("At a hearing on a motion to suppress, the credibility of the witnesses and the weight to be given the evidence, together with the inferences ... to be drawn from the evidence, are all matters to be determined by the trial judge").
 
 
 18
 The government also challenges the finding of the district court that "Jesus' consent was not fully informed and not truly voluntary." Order at 13.
 
 
 19
 We note that the "government has the burden of proving that consent is given freely and voluntarily." Werking, 915 F.2d at 1409. The judge pointed out that Shields' disclosure concerning the nature and extent of the search was insufficient to allow Jesus to make an informed, voluntary decision; the judge also properly tested voluntariness under the totality of the circumstances and whether the consent was sufficiently an act of free will to purge the primary taint, quoting Brown v. Illinois, 422 U.S. 590, 602 (1975), and Wong Sun v. United States, 371 U.S. 471, 486 (1963). Id. at 12. Earlier he distinguished United States v. Werking, 915 F.2d 1404 (10th Cir.1990), pointing out that there the officer and defendant were out on the open road; and in Werking we noted that after being free to leave, the defendant chose to engage in a "consensual encounter" with the officer. Id. at 1409. We cannot hold the finding here to be clearly erroneous, or that the evidence was not ultimately come at by exploitation of the illegality or obtained by means sufficiently distinguishable to be purged of the primary taint. Wong Sun, 371 U.S. at 488.
 
 
 20
 Lastly, the government claims there was error in the finding that the search exceeded the scope of Jesus' consent. The judge pointed out that the consent given was to open the truck and look at the furniture and that the officer never informed Jesus he would be using the dog. It was not "clear that Jesus' consent would allow the officer to enter the truck or handle the furniture ... even assuming disclosure by Shields, the scope of the search was exceeded when [the] drug-sniff dog entered the truck and conducted a search." Order at 14. The government says that "by ignoring the surrounding circumstances, the finding is clearly erroneous." Brief for the United States at 17. However, "[i]t is clear that the scope of a consent search is limited by the breadth of the consent given." United States v. Pena, 920 F.2d 1509, 1514 (10th Cir.1990). Because Jesus only said: "You can see the truck, you can open and look at furniture[,]" Order at 4, we are not persuaded by the argument.
 
 
 21
 AFFIRMED.
 
 
 
 *
 The Honorable John E. Conway, United States District Judge for the District of New Mexico, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3