# UNITED STATES COURT OF APPEALS
## Tenth Circuit
### Byron White United States Courthouse
### 1823 Stout Street
### Denver, Colorado 80294
### (303) 844-3157

**Patrick Fisher**                                                                                          **Elisabeth A. Shumaker**
**Clerk**                                                                                                        **Chief Deputy Clerk**

June 18, 1996

**TO:** ALL RECIPIENTS OF THE CAPTIONED ORDER AND JUDGMENT

**RE:** 95-1415 USA v. Dove
        June 14, 1996 by The Honorable John C. Porfilio

Please be advised of the following correction to the captioned decision:

The file stamp date is incorrect on all but the electronic copies.  The correct date of filing is June 14,1996.

Please make the appropriate correction to your copy.

Very truly yours,

Patrick Fisher, Clerk

Beth Morris
Deputy Clerk

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

LEVELL DOVE, JR.,

      Defendant-Appellant.

No. 95-1415
(D.C. No. 95-CR-115-01-Z)
(District of Colorado)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **HOLLOWAY**, and **LUCERO**, Circuit Judges.

Levell Dove, Jr., was indicted for possession with intent to distribute cocaine and aiding and abetting in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Mr. Dove entered a guilty plea conditioned upon his right to appeal the district court's denial of his motion to suppress evidence seized after a search of his van. He now appeals, and we reverse.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

On the afternoon of March 21, 1995, Trooper Millard was driving west on I-70 when he saw a gray-blue Dodge van driving in the opposite direction. The van was not exceeding the 65 m.p.h. speed limit, but Trooper Millard noticed there were dark objects hanging from the rear view mirror of the van. Believing this to be a violation of a Colorado statute,[1] Trooper Millard made a U-turn, pursued the van, and signaled the driver, Mr. Dove, to pull over.

After pulling over the van, Trooper Millard informed Mr. Dove he had been stopped for obstruction of vision and asked for Mr. Dove's driver's license, registration, and proof of insurance. Mr. Dove, who was traveling with two other companions, handed Trooper Millard a California identification card and began to rummage in the glove compartment for the other documents. Trooper Millard asked who owned the van, and Mr. Dove, after some thought, informed the trooper the van belonged to a female friend who was not traveling with him. Eventually, Mr. Dove was able to produce the van's registration but never located the proof of insurance card.

A computer check showed no outstanding arrest warrants or reports that the van was stolen. The computer did show, however, Mr. Dove's California license had expired. Upon returning Mr. Dove's identification card and registration, Trooper Millard notified Mr. Dove of his expired driver's license and asked him to step out of the van. The two walked to the rear of the van where Trooper Millard asked Mr. Dove if anyone aboard

---

[1]Colo. Rev. Stat. § 42-4-201(4) states: No vehicle shall be operated upon any highway unless the driver's vision through any required glass equipment is normal and unobstructed.

had a valid driver's license. After learning one of the passengers did indeed have a license, Trooper Millard informed Mr. Dove that passenger would have to drive from there. At that point, seven to ten minutes had elapsed since the initial stop.

After instructing Mr. Dove to allow the licensed passenger to drive, Trooper Millard asked Mr. Dove if he had any drugs inside the van. Although Mr. Dove denied the presence of drugs, Trooper Millard asked to search the van, and Mr. Dove granted permission to do so. In the rear of the van, Trooper Millard found a leather coat containing a plastic bag holding several ziplock bags, a razor blade, and a bent business card, but no drugs.

About that time, Dave Kechter, an off-duty Denver Police Department narcotics detective, pulled up in his personal vehicle with his narcotics dog and offered his assistance. With Trooper Millard's permission, Detective Kechter canvased the van a second time with his narcotics dog. During this search, the dog "alerted" to the presence of drugs located in an inside panel of the van. Trooper Millard then confiscated the drugs and placed Mr. Dove and his two passengers under arrest.

Mr. Dove was subsequently indicted for possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and aiding and abetting in violation of 18 U.S.C. § 2. He filed a motion to suppress tangible and oral evidence obtained after the traffic stop. After the district court denied the motion orally from the bench, Mr. Dove entered a guilty plea conditioned upon his right to appeal the district court's denial of his

motion to suppress. He was sentenced to the statutory minimum term of ten years' imprisonment and five years' supervised release.

On appeal, Mr. Dove contends the district court erred in denying his motion to suppress. He argues, first, his continued detention after a routine traffic stop was not supported by a reasonable suspicion or voluntary consent. Mr. Dove next asserts the search exceeded the scope of his consent. Finally, Mr. Dove contends the initial stop was pretextual. We reach only the first issue.

Mr. Dove argues his continued detention was not reasonably related to the traffic violation that allegedly justified the initial stop or to the other traffic violations that were subsequently discovered. He contends once Trooper Millard addressed the obstructed window violation, ascertained the van was not stolen, and was satisfied a licensed driver was present, the detention should have ended because there were no specific and articulable facts which warranted shifting the focus of the intrusion from a traffic stop to a drug investigation.

In reply, the government argues the continued detention was legal because Mr. Dove voluntarily consented to the officer's further questioning. The government argues Mr. Dove's consent was voluntary because at the time consent was given Trooper Millard had returned Mr. Dove's identification card and registration. Citing **United States v. Werking**, 915 F.2d 1404 (10th Cir. 1990), the government asserts a reasonable person would have concluded the traffic stop was over and he was free to leave.

In denying Mr. Dove's motion to suppress, the district court found the detention following the stop was reasonable for five reasons. First, Mr. Dove had no driver's license or proof of insurance. Second, he did not own the van. Third, he could not "readily" provide the name of the van's owner. Fourth, he could not immediately find the van's registration. And fifth, there were at least three, and possibly more, air fresheners in the van.

In reviewing the denial of a motion to suppress, this court must accept the factual findings of the district court unless they are clearly erroneous. ***United States v. Botero-Ospina***, 71 F.3d 783, 785 (10th Cir. 1995) (en banc), ***petition for cert. filed,*** (U.S. March 1, 1996) (No. 95-8121). However, the ultimate determination of reasonableness under the Fourth Amendment is a question of law which we review de novo. ***Id.***

A traffic stop is an investigative detention subject to the strictures of the Fourth Amendment. ***Id.*** at 786. The test for the reasonableness of an investigative detention is "whether the officer's action was justified at its inception," and "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." ***Id.*** (quoting ***Terry v. Ohio***, 392 U.S. 1, 20 (1968)). The issue here is whether Mr. Dove's subsequent detention was reasonably related in scope to Trooper Millard's reasons for instigating the stop.

We have held:

An officer conducting a routine traffic stop may request a driver's license
and vehicle registration, run a computer check, and issue a citation. When

the driver has produced a valid license and proof that he is entitled to operate the car, he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning.

*United States v. Gonzalez-Lerma*, 14 F.3d 1479, 1483 (10th Cir.) (citations omitted) (quoting *United States v. Guzman*, 864 F.2d 1512, 1519 (10th Cir. 1988), *overruled on other grounds by, Botero-Ospina*, 71 F.3d 783 (10th Cir. 1995)), *cert. denied*, 114 S.Ct. 1862 (1994)).  Further questioning is permissible, however, if "(1) during the course of the traffic stop the officer acquires an objectively reasonable and articulable suspicion that the driver is engaged in illegal activity or (2) the driver voluntarily consents to the officer's additional questioning."  *United States v. Sandoval*, 29 F.3d 537, 540 (10th Cir. 1994) (citations omitted).  Neither of these exceptions is present here.

Trooper Millard could not have formed an objectively reasonable and articulable suspicion Mr. Dove was engaged in unlawful activity.  In determining whether an officer could have formed a reasonable suspicion of criminal activity, we consider "the totality of the circumstances,"  *United States v. Fernandez*, 18 F.3d 874, 878 (10th Cir. 1994), and we defer to "the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions."  *United States v. Martinez-Cigarroa*, 44 F.3d 908, 912 (10th Cir.) (Baldock, J., concurring), *cert. denied*, 115 S.Ct. 1386 (1995) (citing *United States v. Sokolow*, 490 U.S. 1, 8 (1989)).  An officer's conduct is evaluated "in light of common sense and ordinary human experience." *United States v. McRae*, 81 F.3d 1528,

- 6 -

1534 (10th Cir. 1996) (quoting *United States v. King*, 990 F.2d 1552, 1562 (10th Cir. 1993)).

Trooper Millard testified he suspected drug activity when he approached the van the first time because he noticed a lot of air fresheners hanging throughout the vehicle and detected their pleasant, but not overwhelming smell. Trooper Millard was also suspicious because Mr. Dove did not own the vehicle and could not "readily" give him the name of the registered owner of the van.[2]

Based on the facts here, we do not think Trooper Millard could have formed a reasonable and articulable suspicion Mr. Dove was involved in some drug-related activity. The strongest support for Trooper Millard's alleged suspicion was the presence of three or more air fresheners in the van. However, air freshener alone cannot provide a reasonable suspicion that drugs are present. *See, e.g., United States v. Alvarez*, 68 F.3d 1242, 1245 (10th Cir. 1995) (McKay, J., concurring) ("Standing alone, air freshener is not sufficient to justify a reasonable search for drugs."), *cert. denied*, 116 S.Ct. 1436 (1996).

Air freshener coupled with other suspicious circumstances may support further reasonable inquiry. *See, id.* (strong smell of air freshener and fact that large truck was

_____

[2]The district court mentioned two other factors supporting its conclusion the detention was justified. However, Trooper Millard did not rely on these factors in formulating his suspicion drugs were present in the van. Therefore, the district court erred in considering these two factors. *See, e.g., United States v. Lee*, 73 F.3d 1034 (10th Cir. 1996) (citing *Terry*, 392 U.S. at 21, and stating a police officer must be able to point to specific and articulable facts warranting continued detention).

rented to merely transport clothes provides basis for subsequent investigation). However, the additional "circumstances" in this case, namely, Mr. Dove's inability to readily provide the name of the van's owner and the fact that he did not own the van, are not in themselves suspect. Therefore, we hold Mr. Dove's continued detention was not supported by a reasonable and articulable suspicion.

The government does not address whether the continued detention was justified based on Trooper Millard's reasonable and articulable suspicion. Instead, the government contends the detention was permissible because Mr. Dove consented to it. Whenever the government relies on the consent of the defendant to validate a search, the government bears the burden of proving the consent was "freely and voluntarily given." *Sandoval*, 29 F.3d at 539 (quoting *Florida v. Royer*, 460 U.S. 491, 497 (1983)).

Here, the government argues after Trooper Millard returned Mr. Dove's California identification card and registration Mr. Dove was free to leave. Therefore, any subsequent questioning was completely voluntary. We have stated, after a driver in a routine traffic stop has his documentation back, "questioning about drugs and weapons or a request for voluntary consent to search may be 'an ordinary consensual encounter between a private citizen and a law enforcement official,'" *United States v. Turner*, 928 F.2d 956, 958 (10th Cir.) (quoting *United States v. Werking*, 915 F.2d 1404, 1408 (10th Cir. 1990)), *cert. denied*, 502 U.S. 881 (1991), "so long as a reasonable person under the

circumstances would believe he was free to leave or disregard the officer's request for information." *United States v. McKneely*, 6 F.3d 1447, 1451 (10th Cir. 1993).

Nevertheless, we have also indicated the return of a driver's documentation does not automatically render subsequent detention voluntary. In *Sandoval*, for example, we held the driver's subsequent detention was involuntary even though the police officer had returned the driver's license and registration. In that case, the officer asked the driver to accompany him back to his patrol car. Once in the patrol car, the officer cautioned the driver about the need to obey the speed limit and then handed over his license and registration. In response to the driver's query, "that's it?," the officer said, "No, wait a minute," and proceeded to ask the driver questions about his possible involvement with drugs. The driver then granted permission for the officer to search his vehicle, and the officer subsequently located the contraband.

In determining whether the consent was voluntary once the officer returned the driver's documentation, we held the appropriate analysis was whether the driver "ha[d] an objective reason to believe that he was not free to end his conversation with the law enforcement officer and proceed on his way." *Id.*, 29 F.3d at 540 (quoting *Werking*, 915 F.2d at 1408). The court then concluded the driver's consent was not voluntary given the "totality of the circumstances."

In this case, as in *Sandoval*, the driver's consent to further questioning was involuntary. When Trooper Millard returned Mr. Dove's documentation, the trooper

- 9 -

contemporaneously asked Mr. Dove to step out of the car. Next, the trooper walked Mr. Dove to the back of the van, questioned him about the presence of a licensed passenger, and informed him the licensed passenger would need to drive. Trooper Millard then asked Mr. Dove about drugs in the van. At no point during this exchange did the trooper inform Mr. Dove he was free to leave. ***See United States v. Gregory***, 79 F.3d 973, 979 (10th Cir. 1996) ("[I]n determining whether consent is voluntary when given following the return of defendant's documents, we look at such factors as whether the officer informed the defendant that he was free to leave...."). Nor do we believe, based on the totality of the circumstances, a reasonable person in Mr. Dove's situation would have felt free to do so.

*McNeely* and *Werking* are distinguishable. In neither case was the driver asked to step outside his car after his documentation was returned. Instead, the police officers, without any "overbearing show of authority,"*Werking*, 915 F.2d at 1409, merely asked a few questions after returning their documentation. Unlike this case, nothing in *McNeely* and *Werking* indicated a reasonable person would not have felt free to end the encounter.

Because we hold the continued detention was unlawful, we need not decide the other issues raised by Mr. Dove.  The judgment of the district court is **REVERSED** and **REMANDED** with instructions to grant the motion to suppress.

ENTERED FOR THE COURT


John C. Porfilio
Circuit Judge