**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 4 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES of AMERICA,

Plaintiff-Appellee,

v.

JUAN PABLO PARRA-GARCIA;
JUAN CARLOS PARRA-
BOJORQUEZ,

Defendants-Appellants.

Nos. 00-4016, 00-4079

D. Utah

(D.C. No. 99-CR-202-1)

---

**ORDER AND JUDGMENT** *

---

Before **TACHA** , **MCKAY** , and **HENRY** , Circuit Judges.

---

Mr. Juan Carlos Parra-Bojorquez and Mr. Juan Pablo Parra-Garcia appeal

the district court's denial of their respective motions to suppress evidence of

contraband seized during a pat-down search on April 19, 1999, at the Salt Lake

City International Airport.  Mr. Parra-Bojorquez also appeals the sentencing

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

court's decision not to grant a downward departure based on either his aberrant conduct or his status as a minor participant. For the reasons set forth below, we affirm the defendants' convictions and sentences. We dismiss Mr. Parra-Borjorquez's appeal insofar as it challenges the district court's refusal to depart downward.

## I. BACKGROUND

The relevant facts are as follows. On April 19, 1999, Officers Patricia Roberts, Don Hutson and Special Agent Jim Wetzel were on duty as members of the DEA Metro Narcotics Task Force in Salt Lake City, Utah. At that time these officers were assigned to an airport drug interdiction unit at the Salt Lake City International Airport. On that same date, Agent Wetzel received information from Task Force Officer Leslie Tate of St. Louis, Missouri that three men, identified as Carlos Parra (Juan Carlos Parra-Bojorquez, herein "Mr. Parra"), Robert De La Cruz, (an alias for defendant Mr. Parra-Garcia), and Sean Herrera, had purchased one-way tickets in Los Angeles, California twenty minutes before the airplane's departure time. The destination of the Los Angeles flight was Salt Lake City, Utah. Agent Wetzel disclosed this information to Officers Roberts and Hutson. The officers verified that there was in fact a Southwest Airlines flight set to arrive from Los Angeles at 11:00 a.m. that day.

The officers arrived at the gate and watched the passengers disembark from the plane following its arrival from Los Angeles. Three male Hispanic passengers deplaned together, two of them carrying bags. The three men were later identified as Mr. Parra, Mr. Parra-Garcia, and Sean Herrera. Shortly after the men exited the plane together, they began to separate, walking approximately three to five yards apart in a somewhat single-file manner with Mr. Herrera in front, followed by Mr. Parra and then Mr. Parra-Garcia. The officers testified that Mr. Parra-Garcia and Mr. Herrera looked behind them more than once.

At one point, Mr. Herrera slowed down and allowed Mr. Parra to catch up with him. Mr. Herrera then handed Mr. Parra a black nylon duffle bag and then separated himself from Mr. Parra, walking three to five yards apart from him as they boarded the escalator and the moving sidewalk leading to the parking garage. While riding the moving sidewalk, Mr. Herrera appeared to notice Officer Hutson, who was watching him from a distance. Mr. Herrera immediately began to walk rapidly toward the parking lot and then veered toward the rental car area. Agent Wetzel followed closely behind Mr. Herrera. Officer Roberts followed Mr. Parra-Garcia, who was also walking in the same direction as Mr. Herrera. Officer Hutson followed closely behind Mr. Parra, who turned left and walked toward the elevators.

Officer Hutson displayed his badge to Mr. Parra and informed him that he was a police officer. At the same time, Officer Roberts approached Mr. Parra-Garcia. Officer Roberts, testified that, when she approached Mr. Parra-Garcia, he would not make eye contact with her and the blood visibly drained from his face. Mr. Parra-Garcia indicated to Officer Roberts that he did not speak English. Officer Roberts told Mr. Parra-Garcia that Officer Hutson spoke Spanish, and she walked with Mr. Parra-Garcia to the location where Officer Hutson and Mr. Parra were standing.[1]

Officer Hutson then began speaking in Spanish to Messrs. Parra and Parra-Garcia. Officer Hutson asked Messrs. Parra and Parra-Garcia for airline tickets and identification. Mr. Parra responded by retrieving his wallet and Mexican voting card. After examining the documents, Officer Hutson returned the materials to him. Officer Hutson then asked Messrs. Parra and Parra-Garcia if the officers could search their bags. Mr. Parra said "yes," and Mr. Parra-Garcia nodded affirmatively, indicating that he also consented to the search. The search of the bags did not reveal any illegal substances.

Officer Hutson then asked Mr. Parra if he could search his person. Mr. Parra nodded his head affirmatively and then began searching himself by patting

---

[1] Agent Wetzel eventually joined the group after having asked Mr. Herrera for permission to search his person and receiving a negative response. After declining consent to be searched, Mr. Herrera walked away.

his body, lifting his shirt and then pulling his shirt away from his body. During this time, Officer Roberts was kneeling down, re-packing Mr. Parra's bag. She looked up while Mr. Parra was searching himself and noticed a horizontal strap across Mr. Parra's torso. Based on her experience and training, she immediately suspected that Mr. Parra was a body packer for narcotics. Officer Roberts informed Officer Hutson of the body strap.

Officer Hutson then noticed a sound as if tape were being put on material and then pulled off. Officer Hutson also observed a distinct, hard square bulge under Mr. Parra's right arm. Agent Wetzel then asked Mr. Parra-Garcia, in Spanish, whether he would consent to a body search. Mr. Parra-Garcia agreed, and the search revealed drugs under his right arm. Officer Hutson then continued his search of Mr. Parra and found two rectangular objects under each of Mr. Parra's arms containing a white, powdery substance which was later tested and identified as cocaine. Both Messrs. Parra and Para-Garcia were arrested.

A federal grand jury indicted Messrs. Parra and Parra-Garcia with one count each of possession of cocaine with intent to distribute, and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Both pleaded guilty to the charge. The district court sentenced Mr. Parra to seventy months in prison, followed by thirty-six months of supervised release. It sentenced Mr.

Parra-Garcia to one-hundred months in prison, followed by thirty-six months of supervised release.

Mr. Parra and Mr. Parra-Garcia filed motions to suppress the cocaine, arguing that Officer Hutson lacked reasonable suspicion to detain them. The district court held an evidentiary hearing on each of the motions. The involved officers testified at the hearings. The district court made thorough findings of fact and found the officers' testimony credible. Applying the factors set forth in United States v. Torres-Guevara, 147 F.3d 1261, 1264-65 (10th Cir. 1998), the court concluded that the encounter remained consensual and was not an investigative detention implicating the Fourth Amendment. Accordingly, it denied the motions to suppress. Mr. Parra also appeals the sentencing court's refusal to depart for his alleged involvement as a minor participant under USSG §3B1.2 and for aberrant conduct pursuant to USSG §5K2.0.

## II. DISCUSSION

**A. Motions to Suppress**

When reviewing the district court's denial of a motion to suppress, we accept its factual findings unless they are clearly erroneous. United States v. Arzaga, 9 F.3d 91, 93 (10th Cir. 1993). In doing so, we consider the totality of the circumstances and view the evidence in the light most favorable to the

government. United States v. Hunnicutt, 135 F.3d 1345, 1348 (10th Cir. 1998). The credibility of witnesses, the weight to be given evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court. Id. However, the determination of whether a seizure occurred and the ultimate determination of reasonableness under the Fourth Amendment are questions of law reviewable de novo. Id.

### 1. Voluntariness of Encounter

In order to resolve the related question of whether the encounter was consensual, and whether defendants voluntarily consented to the searches, we evaluate the totality of the circumstances, with the government bearing the burden of proof. United States v. McRae, 81 F.3d 1528, 1536-37 (10th Cir. 1996). The government must show that there was "no duress or coercion, express or implied, that the consent was unequivocal and specific, and that it was freely and intelligently given." United States v. Nicholson, 987 F.2d 983, 988 (10th Cir. 1993); see United States v. Hudson, 93 F.3d 1493, 1498 (10th Cir. 1996) (when determining consensual nature of encounter, considering whether the defendant "is free to leave at any time during the encounter").

Our review of the record reveals no evidence of duress or coercion. See United States v. Zapata, 997 F.2d 751, 756-57 (10th Cir. 1993) (listing various

factors we consider "in determining whether a police-citizen encounter becomes a seizure"). The plainclothesed officers never brandished or displayed their weapons. See United States v. Soto, 988 F.2d 1548, 1558 (10th Cir.1993) (relying, in part, on the fact that an officer "did not unholster his weapon" in affirming a finding that the defendant's consent was voluntary). The officers made no threats while asking a series of relatively routine questions. The encounter occurred in public space at the airport. Officer Hutson testified that he returned Mr. Parra's identification to him prior to asking permission to search his belongings and person. See Florida v. Royer, 460 U.S. 491, 501 (1983) (permissible for agents to examine a passenger's ticket and driver's license); United States v. Gonzalez-Lerma, 14 F.3d 1479, 1483 (10th Cir. 1994) ("This Circuit follows the bright-line rule that an encounter initiated by a traffic stop may not be deemed consensual unless the driver's documents have been returned to him."); United States v. Werking, 915 F.2d 1404, 1410 (10th Cir. 1990) (affirming a district court finding of no duress when an officer returned driver's license and registration before asking to search). The district court found Officer Hutson's testimony that he promptly returned Mr. Parra's identification credible. Finally, there was no apparent physical touching or physical restraint of the defendants.

The defendants' strongest argument in support of coercion stems from the conduct of Officer Roberts. The record indicates that, when Mr. Parra-Garcia stepped off the moving walkway, Officer Roberts displayed her badge. Mr. Parra-Garcia quickened his pace, and Officer Roberts had to increase her gait to keep alongside him. After determining that Mr. Parra-Garcia did not speak English, she motioned him to escort her over to where Officer Hutson and Mr. Parra were standing, approximately fifteen feet away. In addition, the defendants were never informed that they need not answer the officers' questions and that they could refuse to consent to a search of their persons or luggage. See Zapata, 997 F.2d at 757 (noting that such statements by officers are relevant to the determination of whether the encounter is consensual).

"[A] person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained." United States v. Mendenhall, 446 U.S. 544, 553 (1980). Additionally, a seizure is objectively measured by whether under "all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Id. at 554. Although the defendants were not advised they were free to go, there is no per se rule that requires an advisement that the defendants are free to leave. See United States v. Little, 18 F.3d 1499, 1505 (10th Cir. 1994) ("There is no per se rule requiring such an advisement."); see also United States v. Anderson, 114 F.3d 1059, 1064

-9-

(10th Cir.1997) ("While [the officer] did not specifically tell [defendant] that he was free to leave, that is not required for an encounter to be consensual."). We hold that, based on the totality of the circumstances, after Mr. Parra received his identification back, there was no coercive police conduct. At this time, the defendants engaged in an consensual encounter with the officers. See Werking, 915 F.2d at 1408.

Although not specifically contested, we note that each defendant's consent was specific and unequivocal. Each officer specifically sought permission to search the defendants' luggage and persons. see Zapata, 997 F.2d at 758, and there is no indication that defendants' consent was anything less than unequivocal, specific, and freely and intelligently given. Thus the district court did not err when it refused to suppress the evidence.

## C. Mr. Parra's Sentencing Appeal

Mr. Parra contends that the district court erred when it refused to grant him a downward departure based on his status as either a minor participant in the transaction or for his aberrant conduct. We hold the district court did not so err.

### 1. Minor Participant

Mr. Parra contends that the district court erred when it found him to be more than a minor participant in the transaction.  Mr. Parra bears the burden of proving his entitlement to an offense level reduction by a preponderance of the evidence.   United States v. Smith  , 131 F.3d 1392, 1399 (10th Cir. 1997).  We review the district court's factual findings regarding sentencing for clear error and its legal interpretation of the Guidelines de novo.     United States v. Maldonado-Acosta  , 210 F.3d 1182, 1183 (10th Cir. 2000).

Section 3B1.2 "vests the district court with discretion to grant a base offense level reduction if it finds a defendant is less culpable relative to other participants in a given offense."     United States v. Santistevan   , 39 F.3d 250, 254 (10th Cir. 1994).  Subsection 3B1.2(b) provides a two-level reduction if the defendant acted as a "minor participant" in the offense.

Mr. Parra contends that he was merely an intermediary transporter of drugs and that there were other individuals involved besides Mr. Parra-Garcia and himself.  He contends that the district court erred when it considered only the culpability of Messrs. Parra and Parra-Garcia at sentencing.     See Rec. vol. II, Case No. 00-4016, doc. 2 at pp. 13-16 (Tr. of Sentencing Hr'g, Jan. 18, 2000).

 We agree with Mr. Parra's argument that a courier may be eligible for a minor participant adjustment by "looking at the contours of the underlying scheme rather than the mere elements of the offense charged."     United States v. Harfst   ,

168 F.3d 398, 403 (10th Cir. 1999) (quotation marks omitted). We also agree that the district court's reference to the participants charged suggest that its inquiry was somewhat limited in scope. At the same time, the transcript indicates Mr. Parra chose not to testify regarding other members of the distribution scheme. See id. at 15. The district court could only consider the evidence it had before it.

In addition, our precedent indicates that Mr. Parra's status as courier does not automatically entitle him to a downward departure. See United States v. Ballard , 16 F.3d 1110, 1114 (10th Cir. 1994) (stating that "this court has refused to adopt a per se rule that couriers are minor or minimal participants"). In fact, we have noted that a courier's services may be "as indispensable to the completion of the criminal activity as those of the seller . . . and the buyer . . . and . . . to debate which one is less culpable than the others is not productive." Id. at 1115 (quotation marks and citations omitted).

Regarding the culpability of a defendant, we consider a sentence reduction appropriate when "'an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs.'" United States v. Martinez , 983 F.2d 968, 977 (10th Cir.1992) (quoting USSG § 3B1.2 cmt. (n.1)). In a transaction involving over two kilograms of cocaine, the district court did not clearly err in finding that Mr. Parra did not prove by a preponderance of the evidence that he was a minor participant.

2. Aberrant Conduct

Mr. Parra also objects to the district court's refusal to grant a downward departure from the sentencing guidelines.  At the sentencing hearing, Mr. Parra argued that a downward departure was warranted in his case based on the aberrant nature of his criminal offense conduct.     See United States v. Jones   , 158 F.3d 492, 500 (10th Cir.1998) (considering aberrant conduct as a "mitigating factor in a downward departure decision").

We "cannot exercise jurisdiction to review a sentencing court's refusal to depart from the sentencing guidelines except in the very rare circumstance that the district court states that it does not have any authority to depart from the sentencing guideline range for the entire class of circumstances proffered by the defendant."    United States v. Castillo   , 140 F.3d 874, 887 (10th Cir. 1998).  The sentencing court considered Mr. Parra's arguments and acknowledged that it did have authority to consider Mr. Parra's conduct as a factor in a departure decision. Therefore, we lack jurisdiction to review the court's refusal to depart.

For the reasons stated above, we AFFIRM the district court's denial of defendants' motions to dismiss and we AFFIRM the district court's decision not to grant Mr. Parra a two-level reduction in his offense level. As to the district court's decision refusing to depart downward, we DISMISS this appeal.

Entered for the Court,

Robert H. Henry
Circuit Judge