**UNITED STATES of America,**
**Plaintiff,**

v.

**Jose H. VELAZQUEZ, Defendant.**

**No. 07–40019–01–JAR.**

United States District Court,
D. Kansas.

July 6, 2007.

Marilyn M. Trubey, Ronald E. Wurtz, Office of Federal Public Defender, Topeka, KS, for Defendant.

Randy M. Hendershot, Office of United States Attorney, Topeka, KS, for Plaintiff.

## MEMORANDUM ORDER AND OPINION DENYING DEFENDANT'S MOTION TO SUPPRESS

ROBINSON, District Judge.

This matter comes before the Court on defendant Jose Velazquez's Motion to Suppress Evidence and Statements (Doc. 19). Defendant moves to suppress all items seized from the vehicle that he was driving on February 27, 2007, as well as any statements made subsequent to his arrest, on the grounds that the initial stop was unlawful. A hearing on defendant's motion was held on June 4, 2007, at which time the Court took the matter under advisement. After reviewing the parties' filings and the evidence adduced at the hearing, the Court is now prepared to rule. For the reasons stated below, the Court denies defendant's motion to suppress.

## I. Factual Background

On February 27, 2007, defendant was driving eastbound on Interstate 70. Trooper Jerett Ranieri testified he was driving westbound when he initially noticed that the vehicle's front license plate was askew and seemed to be attached by only one bolt. He then turn his marked patrol car around and began to follow behind defendant eastbound in the passing lane. Trooper Ranieri testified that he had difficulty reading the tags on defendant's vehicle as he followed from about three car lengths behind defendant. He further testified that he could not completely read the name of the state on the tag or the month and year on the registration stickers. The trooper testified that he had reasonable suspicion that both the front and back tag violated K. S.A. § 8–133.[1]

Trooper Ranieri then testified that as he was following, defendant changed lanes after passing a semi-truck, and that the lane change left only three car lengths in front of the truck. The trooper considered the lane change unsafe, although he did not hear nor see the truck apply its brakes or make any response to the lane change. He testified that a safe traveling distance between vehicles is one car length per ten miles per hour that the vehicle is traveling; because defendant was traveling at seventy miles per hour, a safe distance would be seven car lengths. Following this reasoning, the trooper believed a lane change that only left three car lengths would be unsafe when traveling at seventy miles per hour, and was, therefore, a violation of K.S.A. § 8–1522(a).[2] Trooper Ranieri testified that approximately seven years of experience in the Kansas Highway Patrol led him to his conclusion.

The government submitted a number of photographs taken of the vehicle while in police custody, as well as a video taken from the patrol car during the stop and arrest. A picture of the front of the vehicle shows that the front license plate was only attached by one bolt, in the upper left corner, and was slightly askew, at about a fifty-five degree angle. The video submitted by the government shows Trooper Ra-

1. That statute provides, in relevant part, "Every license plate shall at all times be securely fastened to the vehicle to which it is assigned so as to prevent the plate from swinging, and at a height not less than 12 inches from the ground, measuring from the bottom of such plate, in a place and position to be clearly visible, and shall be maintained free from foreign materials and in a condition to be clearly legible." K.S.A. § 8–133.

2. That statute provides, in relevant part, "A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." K.S.A. § 8–1522(a).

nieri walking around the front of the vehicle to look at the license plate and the audio on the video confirms that the trooper then asked defendant about the missing bolt. The photographs also show that the rear license plate had a frame that partially obstructed the tag, including the name of the state and the month and year stickers. The photographs show the top and top right portion of the letter C, along with the top eighth of the L and F, in the state name "California" are partially obstructed. The state name, however, is still legible. On the month sticker, the letter T, in "OCT", is almost completely obstructed, and the letters "O" and "C" are partially obstructed. The sticker bearing the year is also partially obstructed.

## II. Discussion

The law pertaining to routine traffic stops is well established. In order for a traffic stop to be lawful, the Fourth Amendment requires the stop to be (1) justifiable at its inception and (2) reasonably contained in scope to the circumstances that warranted the stop.[3] Defendant contends that the stop was not justifiable at its inception. In order for a stop to be "justifiable at its inception," an officer must have an "objectively reasonable articulable suspicion that a traffic violation has occurred or is occurring."[4] Generally, a routine stop is objectively justified when probable cause or reasonable articulable suspicion exists to believe a traffic violation has occurred.[5] The subjective intentions of the officer have no bearing on the validity of the stop.[6] To be "justifiable at its inception," an officer must have reasonable articulable suspicion that the particular motorist violated any one of the many traffic offenses. In this case, Trooper Ranieri had reasonable suspicion that defendant violated three.

### A. Front Tag

Under a strict reading of K.S.A. § 8–133, defendant's tag was in violation of the statute because it was not "securely fastened to the vehicle;" therefore providing reasonable suspicion to support the stop. Both Kansas and California clearly and unambiguously require a tag to be "securely fastened to the vehicle."[7] K.S.A. § 8–133 specifically requires: "Every license plate shall at all times be securely fastened to the vehicle to which it is assigned so as to prevent the plate from swinging."[8] Kansas courts have held that this statute applies to all vehicles located in Kansas, even those registered in other states.[9]

While there is no precedent defining "securely fastened" in this context, Trooper Rainieri had an objectively reasonable articulable suspicion that defendant's tag was in violation of the statute. Defendant's front tag was secured by only the top left bolt and hanging askew. Because

3. *United States v. Botero–Ospina*, 71 F.3d 783, 786 (10th Cir.1995) (en banc) (citing *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

4. *United States v. Arciga–Bustamante*, Nos. 04–7106, 04–7129, 2006 WL 1659779, at *3 (10th Cir. June 16, 2006); *United States v. Cano*, No. 05–40116–JAR, 2006 WL 2620041, at *2, (D.Kan. Aug. 25, 2006) (citing *United States v. Cervine*, 347 F.3d 865, 869 (10th Cir.2003)).

5. *See Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (probable cause); *Botero–Ospina*, 71 F.3d at 787 (reasonable articulable suspicion).

6. *Whren*, 517 U.S. at 813, 116 S.Ct. 1769.

7. K.S.A. § 8–133, Cal. Veh.Code § 5201.

8. K.S.A. § 8–133.

9. *State v. Hayes*, 8 Kan.App.2d 531, 660 P.2d 1387, 1389 (1983).

the tag was not horizontal to the vehicle, a police officer traveling at seventy miles per hour, in the opposite direction, could have reasonable suspicion that defendant's plate was not securely fastened to the vehicle. Requiring a tag to be securely fastened to the vehicle not only aids in identifying the vehicle, but also maintains the safety of the highways. Having reasonable suspicion that the tag was not securely fastened, in violation of K.S.A. § 8–133, Trooper Ranieri's stop of defendant was therefore valid.

**B. Rear Tag**

■ The obstruction of defendant's rear tag by a vanity license plate frame also provided an objectively reasonable articulable suspicion that defendant had violated a traffic ordinance. Along with requiring tags to be securely fastened, K.S.A. § 8–133 requires tags to be "clearly visible, and . . . maintained free from foreign materials and in a condition to be clearly legible." A tag is "clearly legible" when it is capable of being read by a police officer at a safe following distance.[10] "Officers should not be required to stop vehicles in order to read their tags." [11]

Several cases in this District have interpreted he "clearly legible" portion of the statute. In *United States v. Granados–Orozco*,[12] the plastic cover from the tag was flapping in the wind and, therefore,

the tag was not clearly legible from a safe following distance.[13] In *United States v. Rubio–Sanchez*,[14] an Arizona temporary tag was partially covered by the ball hitch on the truck and, therefore, not clearly legible from a safe following distance.[15] And, in *United States v. Garcia–Medina*,[16] a tag was not clearly legible from a safe following distance when a license plate frame covered the top half of the state name.[17] By contrast, in *United States v. Carter*,[18] the court found that a police officer did not have reasonable suspicion to stop a vehicle when the state name on the rear tag was barely obstructed by a license plate frame.[19] In *Carter*, the officer did not testify that the state name was not clearly legible.[20] Instead, the record demonstrated that the officer was actually able to read the tag fully while following the vehicle and was then able to run the tag and communicate the information to another officer.[21]

Defendant argues that his case is similar to *Carter* and that the stop should, therefore, be found unlawful. However, the court in *Carter* distinguished that case from the other cases stating: "This is not an instance, unlike other cases construing the statute, where all or part of the tag was obscured in a manner which prevented a person from reading the tag or made it difficult for someone to read the tag." [22]

10. *United States v. Garcia–Medina*, No. 06–40129–SAC, 2007 WL 1266818, at *4 (D.Kan. Apr. 30, 2007); *United States v. Rubio–Sanchez*, No. 05–40081–SAC, 2006 WL 1007252, at *1 (D.Kan. Apr. 17, 2006); *United States v. Granados Orozco*, No. 03–40035–SAC, 2003 WL 22213129, at *2 (D.Kan. Aug. 26, 2003).

11. *Granados–Orozco*, 2003 WL 22213129, at *2.

12. *Id.*

13. *Id.*

14. 2006 WL 1007252.

15. *Id.* at *4.

16. 2007 WL 1266818.

17. *Id.* at *2.

18. No. 02–40134–RDR, 2003 WL 22077684 (D.Kan. Aug. 1, 2003).

19. *Id.* at *3.

20. *Id.* at *2.

21. *Id.* at *1.

22. *Id.* at *3.

Unlike the other cases, and the current case, the officer in *Carter* testified he was able to read the whole tag and communicate the information to another officer. In this case, Trooper Ranieri testified that from three car lengths behind defendant's vehicle, he was not able to fully read the state name nor the month and year stickers on the tag. This case may be similar to *Carter*, in that the obstruction of the state name was not substantial; however, the obstruction of the month and year stickers is reasonably substantial. In this case, Trooper Ranieri testified he was not able to read the whole tag. This obstruction of the month and year stickers could cause the tag not to be clearly legible to an officer following at a safe distance, in this case seven car lengths. The obstruction was great enough to provide an objectively reasonable articulable suspicion that a traffic violation had occurred or was occurring.

### C. Passing Another Vehicle

■ Defendant's lane change, after passing a semi-truck, also provided sufficient reasonable suspicion that defendant violated a traffic ordinance. Defendant does not argue that the lane change did not occur, nor that he was more than three car lengths in front of the truck at the time of the lane change. Instead, defendant suggests that (1) the lane change was safe because the truck did not have to brake or slow down, and (2) the trooper's presence might have caused defendant's lane change. Because there is no evidence that Trooper Ranieri purposely caused the lane change and because there was reasonable suspicion that the lane change was unsafe, in violation of K.S.A. § 8–1522(a), defendant's motion is denied.

K.S.A. § 8–1522(a) requires a vehicle to remain in the same lane "until the driver has first ascertained that such movement can be made with safety." For the stop to be valid, Trooper Ranieri needed only an objectively reasonable articulable suspicion that defendant did not remain in the same lane until he "first ascertained that such movement can be made with safety." When analyzing whether a traffic stop was lawful, the court does not decide if the violation occurred, but rather, the court inquires "solely as to whether the facts are adequate to form an objectively reasonable suspicion" that defendant was violating a traffic ordinance.[23] Reasonable suspicion does not require an actual violation, only a " 'minimal level of objective justification.' "[24]

Because defendant changed lanes leaving only three car lengths between himself and a semi-truck, Trooper Ranieri had an objectively reasonable verifiable suspicion the lane change violated K.S.A. § 8–1522(a). Defendant does not dispute that he was traveling at seventy miles per hour and changed lanes only three car lengths in front of a semi-truck. A safe following distance is one car length per every ten miles per hour, which is seven car lengths in this case. Defendant's lane change, therefore, created an unsafe traveling distance of only three car lengths between himself and the truck. Whether the lane change actually resulted in a violation of K.S.A. § 8–1522(a), is not important. Because the lane change was executed within an unsafe traveling distance, there was reasonable suspicion that a traffic violation occurred.

### III. Conclusion

For the reasons noted, any of the three reasons proffered by Trooper Ranieri pro-

---

**23.** *United States v. Vercher*, 358 F.3d 1257, 1260 (10th Cir.2004).

**24.** *Id.* (quoting *I.N.S. v. Delgado*, 466 U.S. 210, 217, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984)).

vided an objectively reasonable articulable suspicion to validate the stop. Accordingly, the Court denies defendant's motion to suppress.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motion to Suppress Evidence and Statements (Doc. 19) is DENIED.

IT IS SO ORDERED.