**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 16, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JOSE H. VELAZQUEZ,

    Defendant-Appellant.

No. 08-3318
(D.C. No. 5:07-CR-40019-JAR)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **HOLLOWAY**, and **GORSUCH**, Circuit Judges.

Jose Velazquez was indicted on one count of possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Following the district court's denial of his pretrial motion to suppress evidence, Mr. Velazquez pled guilty and was sentenced, subject to a reservation of rights permitting him to appeal the district court's suppression ruling. That right he pursues now. For substantially the reasons given by the district court, we believe his suppression motion was properly denied and affirm.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

This case began when Kansas Highway Patrol Troopers Jerett Ranieri and Andrew Dean stopped Mr. Velazquez's car on Interstate 70 after seeing that license plates were improperly displayed and witnessing him make an improper lane change.  Trooper Ranieri approached the passenger's side of the vehicle, explained the reason for the stop, and asked Mr. Velazquez for his driver's license, registration, and insurance.  While Mr. Velazquez looked for these items, the trooper asked him some questions about his travel plans.  Mr. Velazquez replied that he had come from California, but then offered different versions about where he was headed – first saying he was traveling to St. Louis, Missouri, then stating that his destination was St. Louis, Illinois.  At the same time, the trooper detected a strong odor of air freshener coming from the vehicle, which he thought, together with Mr. Velazquez's varying accounts of his itinerary and other factors, suspiciously suggestive of drug trafficking activity.  Adding to this, the registration that Mr. Velazquez originally gave the trooper did not match the tag on the vehicle.  Although Mr. Velazquez subsequently gave Trooper Ranieri a registration that matched the tag, the trooper thought that Mr. Velazquez's possession of two tags for the vehicle might have indicated that he "was maybe crossing the Border" between the United States and Mexico, "and he didn't want to have the tags that he was crossing the Border on."  R. Vol. II at 65-66.

After receiving Mr. Velazquez's paperwork, Trooper Ranieri returned to his car and ran a criminal history check.  The Kansas Highway Patrol dispatch

advised the trooper that Mr. Velazquez had an extensive drug trafficking history. This history included an arrest for transporting large amounts of marijuana across the border between the United States and Mexico. After finishing his checks, Trooper Ranieri walked back to Mr. Velazquez's car, returned Mr. Velazquez's paperwork, and indicated that he had issued him only a traffic warning. The trooper then said: "You guys take care. Thanks for your time." R. Vol. I at 98. After this, Trooper Ranieri took a few steps away from Mr. Velazquez's car, and toward his own car. But then Trooper Ranieri returned to Mr. Velazquez's car and asked, "There's uh, nothing–no illegal drugs or anything in your trunk?" R. Vol. II at 68-69. Mr. Velazquez answered no. Trooper Ranieri asked if he could "take a look and check," R. Vol. II at 110, and Mr. Velazquez agreed, popping open the trunk. Only after Mr. Velazquez opened his trunk did Trooper Ranieri's partner, Trooper Dean, exit the pair's police cruiser and assist with the search.

The search revealed 19.05 kilograms of cocaine. Mr. Velazquez was arrested and, after receiving his *Miranda* warnings, admitted that he knew he was transporting illegal drugs for delivery in St. Louis. A Kansas grand jury indicted Mr. Velazquez on one count of possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).

Before the district court, Mr. Velazquez moved to suppress the evidence taken from his vehicle, as well as his post-arrest inculpatory statements. The district court denied Mr. Velazquez's motions, finding that the traffic stop was

valid, that his acquiescence to the search was voluntary and part of a consensual encounter, and that, in any event, reasonable suspicion of drug trafficking existed to support the detention. Thus, the court concluded that neither the drugs nor the statements should be suppressed. After the district court denied Mr. Velazquez's motions, he entered a conditional plea of guilty, preserving his right to appeal the district court's disposition of his suppression motions.

Before us, Mr. Velazquez does not contest his initial traffic stop. Neither does he contest the voluntariness of his incriminating statements or his consent to the search of his vehicle. He does seek suppression of his statements and the drugs found during the search, however, on the basis that Trooper Ranieri unlawfully continued his detention in violation of the Fourth Amendment after the initial traffic stop ended. Essentially, then, he contends suppression is appropriate because all of the incriminating evidence against him emerged only by dint of an unlawfully extended seizure. In assessing this argument, we review questions of law *de novo* but accept the district court's factual findings unless clearly erroneous, and we are obliged to view the evidence in the light most favorable to the government, as the prevailing party. *See United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1258 (10th Cir. 2006).

Everyone before us concedes that the search of Mr. Velazquez's car and his incriminating statements came after his traffic stop was completed. After finishing a traffic stop, an officer's further seizure or search of a driver is

impermissible under the Fourth Amendment unless: (1) the driver voluntarily consents to it; or (2) during the course of the stop, the officer acquires an objectively reasonable and articulable suspicion that the driver is engaged in illegal activity. *United States v. Sandoval*, 29 F.3d 537, 540 (10th Cir. 1994). The government argues that both of these conditions were met in this case, and the district court so held. Because we agree that Mr. Velazquez voluntarily consented to additional questioning and to the search of his vehicle, and because that alone is sufficient to dispose of this case, we have no need to reach the question whether his continued detention was also supported by reasonable suspicion of drug trafficking. We likewise have no reason to reach the government's additional argument that Mr. Velazquez's continued detention was justified because probable cause existed to arrest him for a traffic infraction.

A traffic stop may become a consensual encounter if the officer returns the driver's license and registration and proceeds to ask questions "without further constraining the driver by an overbearing show of authority." *United States v. Bradford*, 423 F.3d 1149, 1158 (10th Cir. 2005). Under this standard, "an officer is not required to inform a suspect that she does not have to respond to questioning or that she is free to leave." *Id.* But a "coercive show of authority, such as the presence of more than one officer, the display of a weapon, physical touching by the officer, or his use of a commanding tone of voice indicating that compliance might be compelled may suggest that the detention has not ended."

*United States v. Anderson*, 114 F.3d 1059, 1064 (10th Cir. 1997) (internal quotation mark omitted).

We agree with the district court that we are bound by our precedent to conclude that Mr. Velazquez's discussion with Trooper Ranieri, after receiving his warning, was consensual. The district court found that Trooper Ranieri returned Mr. Velazquez's documentation, told him to take care, walked briefly away from the vehicle, and then stepped forward again before asking Mr. Velazquez if he had anything illegal in the car. Although Trooper Ranieri did not specifically inform Mr. Velazquez that he was free to leave, he did say, "You guys take care. Thanks for your time" and took a few steps away from the car. We cannot say that any of these factual findings was clearly erroneous, and we have repeatedly found facts along these lines sufficient to suggest an end to the traffic stop detention and sufficient to signal that subsequent conversation with the officer is consensual. *See, e.g.*, *United States v. Ledesma*, 447 F.3d 1307, 1315 (10th Cir. 2006) ("Phrases like 'thank you' and 'have a safe one' signal the end of an encounter, and afford a defendant an opportunity to depart. Although [the officer] did not explicitly inform [the defendant] and her passenger that they were free to leave, [his] words of farewell suggested that any subsequent discussion was consensual."); *United States v. Wallace*, 429 F.3d 969, 975 (10th Cir. 2005) (initial detention transformed into a consensual encounter when trooper returned driver's paperwork, issued a citation, and said, "That's all I've got");

*Anderson*, 114 F.3d at 1064 (detention became consensual when trooper handed driver a warning citation and returned his papers, even though trooper did not tell driver he was free to go); *United States v. Elliott*, 107 F.3d 810, 814 (10th Cir. 1997) (detention ended and encounter became consensual when officer returned documentation, even though officer never told driver he was free to go); *United States v. Werking*, 915 F.2d 1404, 1409 (10th Cir. 1990) (because initial detention ended when officer returned license and registration, subsequent questioning was consensual, even if officer did not tell driver he was free to go).

As in *Werking*, the only real show of authority in this case was Trooper Ranieri's police uniform and patrol car with still-flashing lights. Although we have recognized that a prudent citizen very well may not be inclined to leave the presence of a uniformed police officer on the side of a public highway after a lawful stop, we have also previously held that such facts alone do not create the level of coercion required to constitute a "seizure" within the meaning of the Fourth Amendment. Indeed, at oral argument, counsel conceded that this case and *Werking* are virtually on "all-fours." As a panel of this court, we are of course bound to apply this court's precedents, not revisit them.

Of course, our precedent would suggest a different result if there were some suggestion that Trooper Ranieri had, for example, displayed his weapon, physically touched or threatened Mr. Velazquez, leaned on Mr. Velazquez's car, or used a commanding tone of voice. *See, e.g.*, *Elliott*, 107 F.3d at 814; *United*

*States v. Turner*, 928 F.2d 956, 959 (10th Cir. 1991). But no such facts are present in this record. Neither does the fact that there was more than one officer present at the scene, without more, suffice to render the encounter non-consensual under our precedent, particularly given that Trooper Dean remained in his car until after Mr. Velazquez authorized the contested search. *See United States v. Chavira*, 467 F.3d 1286, 1291 (10th Cir. 2006) (holding that there was no coercive show of authority when two officers were present, but one stayed in his patrol car until after the trooper obtained consent to search); *Wallace*, 429 F.3d at 975 (finding encounter consensual despite the presence of two troopers because "only the original trooper asked the driver for his consent"). We are therefore obliged to conclude that, once Trooper Ranieri returned Mr. Velazquez's documents, told him to "take care," and stepped away from the vehicle, the detention became "an ordinary consensual encounter between a private citizen and a law enforcement official." *Werking*, 915 F.2d at 1408.

The district court's denial of Mr. Velazquez's motion to suppress is affirmed.

ENTERED FOR THE COURT

Neil M. Gorsuch
Circuit Judge