IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 125,754

STATE OF KANSAS,
*Appellee*,

v.

TASHARA D. YEARGIN-CHARLES,
*Appellant*.

SYLLABUS BY THE COURT

1.

An appellate court uses a dual standard when reviewing a decision ruling on a motion to suppress. First, it reviews the factual underpinnings of the trial court's ruling under a substantial competent evidence standard. It then reviews the ultimate legal conclusion drawn from those facts de novo. When applying this standard, the court does not reweigh the evidence, assess the credibility of the witnesses, or resolve conflicting evidence. When the material facts supporting a district court's decision are not disputed, the ultimate question of whether to suppress is a question of law over which the appellate court exercises unlimited review. To the extent that resolution of this question requires statutory interpretation, this also presents a question of law subject to unlimited review.

2.

The Fourth Amendment to the United States Constitution and section 15 of the Kansas Constitution Bill of Rights protect individuals from unreasonable searches and seizures. But a traffic stop is constitutionally permissible when the law enforcement officer effectuating the stop has specific and articulable facts that create a reasonable suspicion the seized individual is committing, has committed, or is about to commit a crime or traffic infraction.

1

3.

To establish reasonable suspicion justifying a traffic stop, the State must prove by a preponderance of the evidence that the law enforcement officer had a particularized and objective basis for suspecting the person stopped is engaged in criminal activity or has committed a traffic violation. The officer making the stop must be able to articulate more than an inchoate and unparticularized suspicion or hunch.

4.

Reasonable suspicion is a lower standard than probable cause. The reasonable suspicion analysis requires use of an objective standard based on the totality of the circumstances, not a subjective standard based on the detaining officer's personal belief. A traffic violation provides an objectively valid reason to effectuate a traffic stop, even if the stop is pretextual.

Review of the judgment of the Court of Appeals in an unpublished opinion filed July 26, 2024. Appeal from Jackson District Court; NORBERT C. MAREK, judge. Oral argument held March 31, 2025. Opinion filed October 17, 2025. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, argued the cause, and *Kurtis K. Wiard*, assistant solicitor general, and *Kris W. Kobach*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

STANDRIDGE, J.:  Law enforcement pulled over the car in which Tashara D. Yeargin-Charles was a passenger after an officer observed the car's license plate hanging askew and "flapping in the wind." Law enforcement found drugs, drug paraphernalia, and

2

an open container of alcohol inside Yeargin-Charles' purse. She moved to suppress this evidence, alleging that law enforcement lacked reasonable suspicion to initiate the traffic stop. The district court denied the motion, and a jury convicted Yeargin-Charles of possession of methamphetamine, interference with law enforcement, possession of marijuana, possession of drug paraphernalia, and transportation of liquor in an open container. A Court of Appeals panel affirmed the district court.

K.S.A. 8-133(c) requires license plates to be (1) securely fastened to the vehicle, (2) placed at a height of at least 12 inches from the ground, (3) clearly visible, and (4) clearly legible. Based on law enforcement's observation that the car's license plate was hanging askew and "flapping in the wind," we affirm the rulings of both the district court and the Court of Appeals holding that law enforcement had reasonable suspicion of a violation of K.S.A. 8-133(c)'s provision requiring a vehicle's license plate to be "securely fastened."

FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of August 25, 2021, Jackson County Sheriff's Deputy Justin Dobler and Sergeant Travis DeBarge were on patrol near the intersection of 150th Street and Highway 75 in Jackson County, Kansas. While traveling behind a Honda passenger car, Deputy Dobler observed that its license plate was not securely fastened; it was "slanting to the right, and it was visibly shaking."

Based on this observation, Deputy Dobler initiated a traffic stop. The officers approached the car and discovered three people inside. After Sergeant DeBarge observed an open container of alcohol on the rear floorboard of the car, he instructed the three occupants to exit the car so the officers could conduct a search. Yeargin-Charles was in the front passenger seat. She initially provided a false name to Deputy Dobler, but he was

3

eventually able to confirm her identity. While searching Yeargin-Charles' purse, Deputy Dobler discovered an open bottle of peach vodka, a marijuana cigarette, and a glass pipe containing residue that later tested positive for methamphetamine.

The State charged Yeargin-Charles with possession of methamphetamine, interference with law enforcement, possession of marijuana, possession of drug paraphernalia, and transportation of liquor in an open container. Before trial, Yeargin-Charles moved to suppress the evidence found inside her purse, alleging that Deputy Dobler lacked reasonable suspicion to stop the car because the license plate was legible and secure enough to comply with K.S.A. 8-133, the statute requiring the proper display of vehicle registration.

At the suppression hearing, the State presented dash-cam video of the traffic stop and testimony from Deputy Dobler. Although the dash-cam video is not included in the record on appeal, Deputy Dobler testified he initiated the traffic stop because,

> "[t]he vehicle's registration plate was loosely secured by a bolt or a screw on the left side in the manufacturer's hole and was tilted downwards to the right—slanted downwards to the right, not secured by anything, and moving. The plate was obviously moving while it was traveling. . . . Like flapping in the wind, so to speak."

On cross-examination, Deputy Dobler admitted that he had no trouble reading the license plate, that it was not cluttered by any debris or foreign objects, and that it was affixed in the area where license plates are required to be on a car.

After considering the parties' written and oral arguments, the district court denied Yeargin-Charles' motion to suppress. In its order denying the motion, the court relied on Deputy Dobler's testimony and adopted the reasoning of persuasive federal authority

where, under similar facts, officers had reasonable suspicion to initiate traffic stops because the license plates were not securely fastened to the vehicles as required by K.S.A. 8-133(c). See *United States v. Velazquez*, 494 F. Supp. 2d 1250, 1252-53 (D. Kan. 2007), *aff'd* 349 Fed. Appx. 339 (10th Cir. 2009) (unpublished opinion); *United States v. Lopez-Estrada*, No. 10-40013-02-SAC, 2010 WL 2079813, at *4 (D. Kan. 2010) (unpublished opinion), *aff'd* 446 Fed. Appx. 81 (10th Cir. 2011) (unpublished opinion).

The case proceeded to trial, where a jury found Yeargin-Charles guilty as charged. The district court imposed a suspended 20-month prison sentence and an 18-month term of probation.

On direct appeal, the Court of Appeals affirmed the district court's denial of Yeargin-Charles' motion to suppress. *State v. Yeargin-Charles*, No. 125,754, 2024 WL 3548780 (Kan. App. 2024) (unpublished opinion).

We granted Yeargin-Charles' petition for review. Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

ANALYSIS

Yeargin-Charles argues the district court erred in denying her motion to suppress. She claims Deputy Dobler did not have the necessary reasonable suspicion to believe the car's license plate violated the statutory requirements in K.S.A. 8-133(c). In the absence of reasonable suspicion, she argues there was no legal justification to initiate the traffic stop.

5

*Standard of review*

This court uses a dual standard when reviewing a decision ruling on a motion to suppress. First, it reviews the factual underpinnings of the trial court's ruling under a substantial competent evidence standard. It then reviews the ultimate legal conclusion drawn from those facts de novo. When applying this standard, we do not reweigh the evidence, assess the credibility of the witnesses, or resolve conflicting evidence. When, as here, the material facts supporting a district court's decision are not disputed, the ultimate question of whether to suppress is a question of law over which the appellate court exercises unlimited review. *State v. Mendez*, 319 Kan. 718, 735-36, 559 P.3d 792 (2024). To the extent that resolution of this question requires statutory interpretation, this also presents a question of law subject to unlimited review. *State v. Betts*, 316 Kan. 191, 197, 514 P.3d 341 (2022).

*Standard of proof*

The Fourth Amendment to the United States Constitution and section 15 of the Kansas Constitution Bill of Rights protect individuals from unreasonable searches and seizures. U.S. Const. amend. IV; Kan. Const. Bill of Rights, § 15; see *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014) (The search and seizure provisions of the Kansas and United States Constitutions are similar and provide the same rights and protections.). A routine traffic stop is a seizure under the Fourth Amendment. *State v. Jiminez*, 308 Kan. 315, 322, 420 P.3d 464 (2018). But a traffic stop is constitutionally permissible when the law enforcement officer effectuating the stop has "specific and articulable facts that create a reasonable suspicion the seized individual is committing, has committed, or is about to commit a crime or traffic infraction." *State v. Cash*, 313 Kan. 121, Syl. ¶ 2, 483 P.3d 1047 (2021); see K.S.A. 22-2402(1) (codifying *Terry v. Ohio*, 392 U.S. 1, 20-21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 [1968]); *State v. Arrizabalaga*,

6

313 Kan. 323, 330, 485 P.3d 634 (2021) (A traffic stop is a form of investigative detention which must be legally justified from the start by reasonable suspicion of criminal activity.). Yeargin-Charles, as a passenger in a car stopped by law enforcement, may challenge the legality of the traffic stop. See *Brendlin v. California*, 551 U.S. 249, 255-59, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007) (When law enforcement stops a car, both the driver and any passengers are seized.).

Reasonable suspicion is a lower standard than probable cause that requires the court to find by a preponderance of the evidence that the State presented "'a particularized and objective basis' for suspecting the person stopped is engaged in criminal activity. [Citation omitted.]" *Cash*, 313 Kan. at 127. "The officer making the stop must be able to articulate more than an 'inchoate and unparticularized suspicion or "hunch."'" 313 Kan. at 127 (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S. Ct. 673, 145 L. Ed. 2d 570 [2000]); see also *Kansas v. Glover*, 589 U.S. 376, 380, 140 S. Ct. 1183, 206 L. Ed. 2d 412 (2020) ("Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause."). "The reasonable suspicion analysis requires use of an objective standard based on the totality of the circumstances, not a subjective standard based on the detaining officer's personal belief." *Cash*, 313 Kan. at 130. "A traffic violation provides an objectively valid reason to effectuate a traffic stop, even if the stop is pretextual." *Mendez*, 319 Kan. at 735.

*Discussion*

Deputy Dobler initiated the traffic stop based on a suspected violation of K.S.A. 8-133(c), which provides:

"Every license plate shall at all times be securely fastened to the vehicle to which it is assigned, to prevent the plate from swinging, and at a height not less than 12 inches from the ground, measuring from the bottom of such plate. The license plate shall be fastened in a place and position to be clearly visible, and shall be maintained free from foreign materials and in a condition to be clearly legible."

Deputy Dobler provided the following testimony on direct examination at the suppression hearing:

"Q. Okay. What drew your attention to that particular vehicle?

"A. We were following in behind—directly behind a vehicle, eastbound on 150th and 75-Highway.

"Q. Okay. And what stood out about that vehicle to you?

"A. The vehicle's registration plate was loosely secured by a bolt or a screw on the left side in the manufacturer's hole and was tilted downwards to the right—slanted downwards to the right, not secured by anything, and moving. The plate was obviously moving while it was traveling.

"Q. Okay. When you say it was moving, what do you mean by that?

"A. Like flapping in the wind, so to speak.

"Q. Okay. And did you conduct a traffic stop based on that?

"A. Yes.

"Q. And to your knowledge, do you happen to recall what statute that violates?

"A. Improper display of registration."

8

After taking the matter under advisement, the district court entered the following order denying the motion to suppress:

"A motion to suppress was filed in this matter alleging the vehicle stop was invalid due to the car's compliance with K.S.A. 8-133. The officer testified he stopped the vehicle because the license plate was askew and held in place by one bolt. He believed this violated K.S.A. 8-133. The plate was otherwise readable. Kansas Federal District judges have twice addressed a similar situation. *U.S. v. Velazquez*, 494 F. Supp. 2d 1250, 1252-53 (D. Kan. 2007), *U.S. v. Lopez-Estrada*, 2010 WL 2079813, at *4 (D. Kan. May 25, 2010). Those courts have found:

'While there is no precedent defining "securely fastened" in this context, Trooper Rainieri had an objectively reasonable articulable suspicion that defendant's tag was in violation of the statute. Defendant's front tag was secured by only the top left bolt and hanging askew. Because the tag was not horizontal to the vehicle, a police officer traveling at seventy miles per hour, in the opposite direction, could have reasonable suspicion that defendant's plate was not securely fastened to the vehicle. Requiring a tag to be securely fastened to the vehicle not only aids in identifying the vehicle, but also maintains the safety of the highways. Having reasonable suspicion that the tag was not securely fastened, in violation of K.S.A. § 8-133, Trooper Ranieri's stop of defendant was therefore valid.' *Velazquez* at 1252-53.

'License plates typically have at least one hole at each end of the top and/or the bottom of the plate. When a plate is not attached with bolts at both ends and one side is hanging lower than the other, there is reason to question whether the plate is so secured as to prevent swinging. The statute does not require the license plate to be seen swinging for a violation. It is enough for reasonable suspicion that the officer believe the plate is attached in a manner that would not prevent it from swinging.

9

Having seen the plate hanging lower on one end from the fact that it was wired and not bolted, Trooper Trinkle had reasonable suspicion to stop the truck based on his initial observations of the license plate being attached in a manner that did not prevent swinging.' *Lopez-Estrada* at 4.

"The Court finds the reasoning of these District Judges of the Federal Court to be persuasive and adopts their opinions as the findings of this Court. Based on the findings the motion to suppress is denied."

Upon review, we find substantial competent evidence supports the factual underpinnings of the district court's conclusion that Deputy Dobler had reasonable suspicion to stop the vehicle for a suspected violation of K.S.A. 8-133(c). The uncontroverted testimony of the deputy was that the license plate was "loosely secured by a bolt or a screw on the left side in the manufacturer's hole and was tilted downwards to the right," that it was "not secured by anything" on the opposite end, and that the plate was visibly "moving" and "flapping in the wind." Deputy Dobler articulated more than an inchoate and unparticularized suspicion or hunch; the particularized facts to which he testified provide an objective and reasonable basis to believe the plate was not "securely fastened to the vehicle" in a way that would "prevent the plate from swinging" as required by the statute.

But Yeargin-Charles asserts that the car's license plate being askew and only attached by one screw is not per se unlawful because Deputy Dobler had no trouble reading the license plate and K.S.A. 8-133(c) only "prohibits the plate from swinging from side to side to such a degree as to make the license plate illegible to an officer wishing to check on the validity of the license plate." Stated another way, Yeargin-Charles suggests a violation of K.S.A. 8-133(c) occurs only when an improperly secured license plate prevents an officer from reading it.

10

Whether the failure to securely fasten a license plate to a vehicle constitutes a violation of K.S.A. 8-133(c) where visibility and legibility are not in question appears to be an issue of first impression in this court. Resolution of this issue requires the interpretation of K.S.A. 8-133(c). The primary purpose in interpreting a statute is to give effect to the intention of the Legislature. We first look to the statutory language itself to determine the legislative intent, giving common words their ordinary meanings. When the language of a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *State v. Keys*, 315 Kan. 690, 698, 510 P.3d 706 (2022).

Although this case involves a different subsection of the statute, we note that *State v. Beck*, 321 Kan. ___ (No. 126,350, modified opinion filed October 10, 2025), is the only other Kansas Supreme Court opinion to interpret K.S.A. 8-133. In *Beck*, this court addressed whether partial obstruction of a license plate's state name by a decorative frame constituted a violation of the statute's visibility and legibility requirements. While *Beck* did not involve the "securely fastened" language at issue here, we emphasized that statutory interpretation must adhere closely to the plain language of the provision and avoid reading requirements into the statute that do not exist.

The first sentence of K.S.A. 8-133(c) provides that the license plate must be "securely fastened to the vehicle . . . to prevent the plate from swinging" and positioned at least 12 inches from the ground. K.S.A. 8-133(c). The second sentence requires the plate to be in a "place and position to be clearly visible" and in a condition to be "clearly legible." K.S.A. 8-133(c). Thus, a strict reading of the statute's plain language imposes four requirements for the display of license plates: (1) the license plate must be securely fastened to the vehicle, (2) the license plate must be positioned at least 12 inches from the

ground, (3) the license plate must be clearly visible, and (4) the license plate must be clearly legible.

Although the primary objective of K.S.A. 8-133(c)'s requirements is presumably to ensure license plates can be easily read to identify vehicles, Yeargin-Charles' interpretation of the statute ignores the plain language requiring a license plate to be securely fastened to the vehicle. Nothing in K.S.A. 8-133(c) suggests that a driver need not comply with this requirement so long as the license plate is otherwise visible and legible. Indeed, Yeargin-Charles' interpretation would render this portion of the statute meaningless. See *State v. Smith*, 311 Kan. 109, 114, 456 P.3d 1004 (2020) (Courts presume the Legislature does not intend to enact meaningless legislation.). By including language requiring the secure attachment of license plates, the Legislature intended for them to be "securely fastened" to vehicles, regardless of their visibility or legibility.

The flaw in the dissent's statutory interpretation is that it focuses too narrowly on the statutory phrase "to prevent the plate from swinging," while overlooking the broader statutory requirement that the plate be "securely fastened." And even if we were to accept the dissent's flawed interpretation—that a license plate meeting all other requirements (visible, legible, and properly placed) violates K.S.A. 8-133(c) only when it is actually swinging—the touchstone of our analysis is whether it was reasonable for the officer to think the law was being broken, not technical perfection in statutory parsing. See *City of Atwood v. Pianalto*, 301 Kan. 1008, 1013, 350 P.3d 1048 (2015) (citing *Heien v. North Carolina*, 574 U.S. 54, 135 S. Ct. 530, 536, 190 L. Ed. 2d 475 [2014]) (reasonable suspicion, as required for a traffic stop or an investigatory detention, can rest on a reasonable mistake of law).

Notably, our interpretation of the statute is consistent with federal caselaw analyzing K.S.A. 8-133(c) with virtually identical facts. In *Lopez-Estrada*, a highway

12

patrol trooper observed the defendant's license plate "hanging down" on one side; it appeared to be attached by a string or a wire and was not bolted to the truck. 446 Fed. Appx. at 82. The Tenth Circuit Court of Appeals held that these circumstances provided the trooper with reasonable suspicion of a violation of K.S.A. 8-133(c)'s provision requiring the license plate to be securely fastened. 446 Fed. Appx. at 82-83 ("[I]t was certainly reasonable for the trooper to think that a jury-rigged job of affixing a license plate might leave it poorly fastened and cause it to swing in violation of Kansas law."). And in *Velazquez*, a highway patrol trooper observed that the defendant's front license plate was askew and seemed to be attached by only one bolt. 494 F. Supp. 2d at 1251. The federal district court held that the trooper had reasonable suspicion to initiate a traffic stop under K.S.A. 8-133(c) because the defendant's license plate was not securely fastened to the vehicle. 494 F. Supp. 2d at 1253 ("Requiring a tag to be securely fastened to the vehicle not only aids in identifying the vehicle, but also maintains the safety of the highways.").

Courts in other jurisdictions with similar statutory license plate requirements have also held that an unsecured license plate may, on its own, provide reasonable suspicion of a statutory violation. See, e.g., *State v. Martin*, 148 Idaho 31, 36-38, 218 P.3d 10 (2009) (trooper's observation that defendant's license plate was secured by only one bolt and hung at an angle constituted reasonable suspicion of a violation of Idaho Code § 49-428[2]); *State v. Dickerson*, 179 Ohio App. 3d 754, 757-58, 903 N.E.2d 697 (2008) (officer's observation that defendant's license plate was hanging from one corner and resting on car's bumper constituted reasonable suspicion of a violation of R.C. § 4503.21[A][2]); *Hawkins v. United States*, 902 A.2d 99, 101 (D.C. 2006) ("[T]he officers had an objective reason to believe that Hawkins' license plate did not comply with [18 DCMR § 422.4 (Weil)] because it was not 'securely fastened' to his vehicle, and . . . the police therefore were authorized to investigate the matter by initiating a traffic stop.").

13

K.S.A. 8-133(c) requires license plates to be (1) securely fastened to the vehicle, (2) placed at a height of at least 12 inches from the ground, (3) clearly visible, and (4) clearly legible. Thus, non-compliance with any of these requirements may provide reasonable suspicion for law enforcement to initiate a traffic stop. Because Deputy Dobler observed the car's license plate hanging askew and "flapping in the wind," he had reasonable suspicion of a violation of K.S.A. 8-133(c)'s provision requiring a vehicle's license plate to be "securely fastened." As a result, the panel did not err in affirming the district court's order denying Yeargin-Charles' motion to suppress.

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

WILSON, J., not participating.
WALSH, J., assigned.

\* \* \*

STEGALL, J., dissenting:  Recently, we held the State to strict compliance with the text of K.S.A. 8-133(c) when making a traffic stop. *State v. Beck*, 321 Kan. ___, slip op. at 12 (No. 126,350, modified opinion filed October 10, 2025) ("The obstruction of the state name will not be deemed a statutory violation because the statutory scheme does not require that the state name be printed in such a manner as to be clearly legible."). Today, however, we have permitted the state to ignore a crucial factual element of the misdemeanor crime set forth in the same statute. As such, I dissent.

While doing routine traffic patrol, officers noticed a parked vehicle in a casino parking lot with a slightly askew license plate. Because "a picture is worth a thousand words." *F.C.C. v. CBS Corp.*, 567 U.S. 953, 132 S. Ct. 2677, 183 L. Ed. 2d 712 (2012)

14

(Roberts, C.J., concurring in the denial of certiorari), I have reprinted the photograph of the plate entered into evidence below:



One can immediately discern that the plate is attached to the vehicle with one firmly affixed bolt and is decanted at a slight downward angle. This is what law enforcement observed, and it is what triggered their decision to pretextually stop the vehicle once it left the casino parking lot. As the car drove onto the street, the officers followed the car long enough to see the license plate "visibly shaking." Officers testified this meant the plate was "flapping in the wind" "against the back of the vehicle" in a "toward-me and away-from-me motion." Based on these observations, the officers initiated a stop of the vehicle for a violation of K.S.A. 8-133(c). What transpired next led to Tashara Yeargin-Charles being convicted of possession of methamphetamine, interference with law enforcement, possession of marijuana, possession of drug paraphernalia, and transportation of liquor in an open container.

Yeargin-Charles filed a motion to suppress, arguing that the officers lacked reasonable suspicion to initiate a traffic stop based on K.S.A. 8-133(c). The district court denied her motion, and the majority affirms that decision. Under the plain language of K.S.A. 8-133(c), I reach the opposite conclusion.

"On a motion to suppress, an appellate court generally reviews the district court's findings of fact to determine whether they are supported by substantial competent evidence and reviews the ultimate legal conclusion de novo." *State v. Cash*, 313 Kan. 121, 125-26, 483 P.3d 1047 (2021). In reviewing the factual findings, an appellate court does not reweigh the evidence or assess the credibility of witnesses. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018). Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. Smith*, 312 Kan. 876, 887, 482 P.3d 586 (2021). "'The State bears the burden to demonstrate that a challenged search or seizure was lawful.'" *State v. Walker*, 292 Kan. 1, 5, 251 P.3d 618 (2011).

I agree with the majority's description of the Fourth Amendment's protections. "'A routine traffic stop is a seizure under the Fourth Amendment.'" *State v. Yeargin-Charles*, 321 Kan. ___, slip op. at 6 (quoting *State v. Jimenez*, 308 Kan. 315, 322, 420 P.3d 464 [2018]). This is constitutionally permissible when the law enforcement officer effectuating the stop has "specific and articulable facts that create a reasonable suspicion the seized individual is committing, has committed, or is about to commit a crime or traffic infraction." *Cash*, 313 Kan. 121, Syl. ¶ 2; see K.S.A. 22-2402(1) (codifying *Terry v. Ohio*, 392 U.S. 1, 20-21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 [1968]); *State v. Arrizabalaga*, 313 Kan. 323, 330, 485 P.3d 634 (2021) (A traffic stop is "a form of investigative detention which must be legally justified from the start by reasonable suspicion of criminal activity."). Yeargin-Charles, as a passenger in a car stopped by law

16

enforcement, may challenge the legality of the traffic stop. See *Brendlin v. California*, 551 U.S. 249, 255-59, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007) (When law enforcement stops a car, both the driver and any passengers are seized.).

The problem comes when the majority analyzes the officers' articulated reasonable suspicion against what amounts to a nonexistent statute. Simply put, the majority describes the "requirements" of K.S.A. 8-133(c) but omits material language from its "strict reading" of that statute's requirements. *Yeargin-Charles*, 321 Kan. at ___, slip op. at 3, 11-12, 14.

The majority repeatedly says that K.S.A. 8-133(c) requires "(1) the license plate must be securely fastened to the vehicle, (2) the license plate must be positioned at least 12 inches from the ground, (3) the license plate must be clearly visible, and (4) the license plate must be clearly legible." 321 Kan. at ___, slip op. at 11-12.

But the statute itself imposes more:

> "'Every license plate shall at all times be *securely fastened to the vehicle to which it is assigned, to prevent the plate from swinging,* and at a height not less than 12 inches from the ground, measuring from the bottom of such plate. The license plate shall be fastened in a place and position to be clearly visible, and shall be maintained free from foreign materials and in a condition to be clearly legible.'" (Emphasis added.) 321 Kan. at ___, slip op. at 8 (quoting K.S.A. 8-133[c]).

Thus, a true "strict reading" of the statute would recognize that Kansas law only requires a license plate be "securely fastened" to the vehicle such that it is "prevent[ed] . . . from swinging." In other words, the statute defines the degree to which a plate must be "securely fastened"—"to prevent the plate from swinging." K.S.A. 8-133(c). The majority completely ignores this qualifier embedded in the statute and then bases its

17

evidentiary review on its rewritten requirements. The majority's construction, then, renders the statutory language "to prevent the plate from swinging" meaningless. *State v. Smith*, 311 Kan. 109, 114, 456 P.3d 1004 (2020) (courts must construe statutes to presume the Legislature does not intend to enact meaningless legislation).

I agree with the majority that there is sufficient testimonial evidence in the record to establish reasonable suspicion that the plate was not fastened securely enough to prevent the kind of "shaking," "flapping," and "oscillating" in a back-and-forth motion described by the testimony. But this conclusion is insufficient to establish reasonable suspicion that the vehicle was in violation of the actual text of K.S.A. 8-133(c).

An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *State v. Eckert*, 317 Kan. 21, 27, 522 P.3d 796 (2023). When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *State v. Keys*, 315 Kan. 690, 698, 510 P.3d 706 (2022). Here, the majority hurdles over the plain language of the statute and, without explanation, implicitly holds that some undefined degree, or possibly any degree, of *potential* movement constitutes a violation of K.S.A. 8-133(c). See *United States v. Velazquez*, 494 F. Supp. 2d 1250, 1251-53 (D. Kan. 2007) (holding a stop was valid when the officer observed the front license plate "seem[ing]" to be attached by only one bolt), *aff'd* 349 Fed. Appx. 339 (10th Cir. 2009) (unpublished opinion). The majority's formulation is not supported by the actual language of K.S.A. 8-133(c).

Giving common words their ordinary meanings, "flapping" and "shaking" describe different movements from "swinging." "Flapping" is "[t]o move back and forth or up and down as in the wind; flutter." Webster's New World College Dictionary 550 (5th ed.

18

2016). "Shaking" is "to cause to move up and down, back and forth, or from side to side with short, quick movements." Webster's New World College Dictionary 1333 (5th ed. 2016). While "swinging" is defined as "to cause to turn or pivot, as on a hinge or swivel . . . to cause to hang freely, so as to be *capable of easy movement*." (Emphasis added.) Webster's New World College Dictionary 1466 (5th ed. 2016).

One does not need to be a legal scholar or even dissect these dictionary definitions to understand that "flapping" and "shaking" are not factually identical terms to "swinging." Kansans accustomed to prairie windstorms are familiar with the sight of road signs "flapping in the breeze" and can readily distinguish this from a sign that has lost its upper-most bolt and is "swinging" on the pivot point of its last remaining bolt.

Therefore, the correct legal question is whether there is substantial competent evidence—i.e., whether there are sufficient specific and articulable facts—that the license plate was not securely fastened to prevent the plate from swinging.

Officers testified that they had identified the license plate as not being securely fastened *before* they viewed the vehicle moving. Once they had flagged the car, they began following it only to view the license plate "flapping" and "shaking." Nowhere in the record did the officers testify that the plate was "swinging." Also notably absent is any further description of the plate's movement. While not required by statute, such evidence that the plate was moving so much to be illegible or be a potential roadway hazard could support a finding the plate was "swinging." Here, officers testified they had no issue reading the plate.

The majority insists it is merely performing a totality of the circumstances analysis with the "touchstone" being "whether it was reasonable for the officer to think the law was being broken" as opposed to "technical perfection in statutory parsing." See *Yeargin-*

19

*Charles*, 321 Kan. at \_\_\_, slip op. at 12. But no matter how the majority characterizes its decision, the record clearly demonstrates that the plate in question was securely fastened. We abandon our duty of independent review when we simply defer to an officer's testimony about what counts as "secure" when we decline to enforce the objective standards, words like "secure" become entirely subjective. Is a plate with two bolts "secure" if an officer thinks it isn't? Here the majority runs squarely into the constitutional problem of vagueness we have previously addressed numerous times. See *State v. Stubbs*, 320 Kan. 568, 578, 570 P.3d 1209 (2025) ("A statute that fails to provide adequate enforcement guidelines effectively transfers the 'responsibility for defining crimes' to 'police, prosecutors, and judges.'" [quoting *United States v. Davis*, 588 U.S. 445, 451, 139 S. Ct. 2319, 204 L. Ed. 2d 757 (2019)]); *State v. Harris*, 311 Kan. 816, 823, 467 P.3d 504 (2020) ("[C]lear-but-overbroad laws [are] 'vague' because by failing to provide adequate enforcement guidelines, the Legislature has left it up to other actors to give the law teeth through their enforcement decisions and actions."); *State v. Ingham*, 308 Kan. 1466, 1483, 430 P.3d 931 (2018) (Stegall, J., concurring) ("Vague laws give police officers, prosecutors, judges, and juries the authority to decide what the law is on an ad hoc basis—all without the political accountability inherent in the legislative process."); *City of Lincoln Center v. Farmway Co-Op, Inc.*, 298 Kan. 540, 548-49, 316 P.3d 707 (2013) ("Based upon the standards established in the caselaw of the Supreme Court and this court, we readily conclude the noise ordinance is unconstitutionally vague . . . by failing to 'convey sufficient clarity to those who apply the ordinance standards to protect against arbitrary and discriminatory enforcement.'"); see also *United States v. Williams*, 553 U.S. 285, 306, 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008). ("What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is."); *United States v. Reese*, 92 U.S. 214, 221, 23 L. Ed. 563 (1875) ("It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and

20

say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the government.").

While the majority cites to similar cases in federal court analyzing K.S.A. 8-133(c) to bolster its position, "Kansas state courts are not bound to follow the precedent of the Tenth Circuit Court of Appeals." *State v. Thompson*, 284 Kan. 763, 801, 166 P.3d 1015 (2007); *State v. Anderson,* 281 Kan. 896, 909, 136 P.3d 406 (2006); *Wilkins v. Tourtellott*, 42 Kan. 176, 197, 22 P. 11 (1889) ("This court, however, is not bound to follow the opinion of a judge of the United States circuit court[.] . . . The United States circuit court is a court of inferior, not of superior, jurisdiction to this court."). To the extent that the Tenth Circuit cases conflict with this opinion, I consider them unpersuasive.

I would reverse the judgments of the lower courts, grant defendant's motion to suppress, hold that the stop of the vehicle was in violation of the Fourth Amendment, and reverse defendant's convictions.

ROSEN and WALL, JJ., join the foregoing dissenting opinion.